[No. 24981. Department Two. July 20, 1934.]

FLORENCE T. WIARD, *Appellant,* v. THE MARKET OPERATING CORPORATION, *Respondent.*[1]

[1]Reported in 34 P. (2d) 875.

*William R. Bell* and *H. Sylvester Garvin,* for appellant.

*John W. Heal, Jr.,* and *Poe, Falknor, Falknor & Emory,* for respondent.

BLAKE, J.—Plaintiff brought this action to recover damages on account of injuries sustained in a fall on the floor of a building owned by defendant. A jury returned a verdict in her favor for five thousand dollars. Upon motion, the court entered judgment for the defendant notwithstanding the verdict. Plaintiff appeals.

As we understand the record, the appeal, on the appellant's side, presents only the problem of the sufficiency of the evidence on the question of respondent's negligence to make a case for the jury. Before passing to that question, we may say, without discussing the evidence, that appellant, though a married woman, was entitled to maintain the action under Rem. Rev.

Stat., § 181, subd. 3, as construed in *Horton v. Seattle,* 53 Wash. 316, 101 Pac. 1091; that the evidence was sufficient to justify the jury in finding that the room in which appellant fell was under the control of respondent, and that it was responsible for its condition; that the appellant was an invitee and not a licensee. The three issues just mentioned were submitted to the jury under adequate instructions.

The room where appellant fell was a hall, or auditorium, maintained by respondent for the benefit of the tenants of the building of which it was a part. At the time of the accident, it was in the immediate charge of a Miss Malloy, who served lunches there to various organizations of women's clubs. The cooking was done on a raised platform at one end of the room. In front of the platform was a service table, upon which the food was placed. Down the room from the service table were rows of chairs and small tables at which the lunch was served. There was a space of five or six feet between the service table and the first row of small tables and chairs. The sponsors of the luncheon would take the plates of food from the service table and serve it to the guests at the small tables.

On December 8, 1930 (Monday morning), appellant called to see Miss Malloy on business. Miss Malloy being engaged at the time, appellant sat down in a chair at one of the small tables in the row immediately in front of the service table. Shortly thereafter, as Miss Malloy approached, appellant arose, took two or three steps, then slipped and fell. She testified:

"I turned around to see what I had fallen on. I could not see any reason for falling and I saw that I had fallen— Q. What did you see there? A. Well, just a dark spot of some kind, a grease spot, or something, where my heel had scraped. . . . Q. What was it Miss Malloy said to you in reference to your fall? A. She said that that was a bad place. She had

wondered why there weren't—there was going to be a real bad accident there some day, that food was often dropped there, and as well as she knew the place she had to watch her step, and that she had slipped herself several times, and she thought there ought to be a mat on the floor."

Miss Malloy took the witness stand as a witness for respondent, and made no denial of the above statements attributed to her by appellant. Miss Malloy did say that she did not see any grease on the floor where appellant fell. Respondent's evidence was to the effect that the room was cleaned and swept every day, and mopped up on Saturdays; that the room had been cleaned and mopped the preceding Saturday, and no food had been served between that time and the time appellant fell.

The rules of law defining the rights and obligations of proprietors of stores and restaurants and their invitees are clear and simple. *Stone v. Smith-Premier Typewriter Co.*, 48 Wash. 204, 93 Pac. 209, 45 C. J. 866. In the first citation, it is stated:

"The law requires a storekeeper to maintain his storeroom in such a condition as a reasonably careful and prudent storekeeper would deem sufficient to protect customers from danger while exercising ordinary care for their own safety. A customer entering a store of this character is required to use that degree of care and prudence which a person of ordinary intelligence, care and prudence would exercise under the same circumstances."

In the second is the following:

"Where negligence is predicated upon the failure to keep the premises in repair, it must be shown that the defective condition has either been brought to the notice of defendant or has existed for such time as would have afforded sufficient opportunity to make proper inspection of the premises to ascertain their condition as to safety and to repair their defects." 45 C. J. 866.

In applying the rules, however, the decisions of the courts are as variegated as the facts which give rise to the different cases. For that reason, analysis of the various cases dealing with the subject would serve no useful purpose. We shall, therefore, examine the facts as disclosed by the record in this case, in the light of the rules above quoted, citing some cases which are closely analogous.

 That the question of contributory negligence was for the jury is not seriously questioned. The grease spot was not so large as to attract the attention of appellant prior to her fall, notwithstanding she had been sitting within a few feet of it for some minutes. One cannot be charged with contributory negligence as a matter of law unless the defective condition of the floor is so obvious as to challenge attention to the danger it threatens. *Robb v. Niles-Bement-Pond Co.*, 269 Pa. 298, 112 Atl. 459; *Watson v. Zimmerman*, 175 Wash. 410, 27 P. (2d) 707.

In determining the question of respondent's negligence, two elements are to be considered: (a) Was the floor in a reasonably safe condition, ''sufficient to protect customers from danger;'' and (b) if it was not, did respondent have actual or constructive notice of the fact?

 That the evidence was sufficient to take the first phase of the question to the jury is not, it seems to us, open to doubt. That grease on a floor, whether in large or small quantity, renders footing treacherous and would likely occasion a fall to one stepping in it, is too plain for argument. The fact that she fell is not disputed. Her testimony that grease on the floor caused her to fall was positive. This was substantial proof that the floor was not in a reasonably safe condition ''sufficient to protect customers from danger,'' and was sufficient to take that phase of the question to the

jury. *Randolph v. Great Atlantic & Pacific Tea Co.,* 2 Fed. Supp. 462; *Holmes v. Ginter Restaurant Co.,* 54 Fed. (2d) 876; *Robb v. Niles-Bement-Pond Co.,* 269 Pa. 298, 112 Atl. 459; *Kalb v. Fisher,* 5 N. J. Misc. 977, 139 Atl. 237, 105 N. J. Law 491, 144 Atl. 919; *Langley v. F. W. Woolworth Co.,* 47 R. I. 165, 131 Atl. 194; *Judson v. American Ry. Express Co.,* 242 Mass. 269, 136 N. E. 103; *Markman v. Bell Stores Co.,* 285 Pa. 378, 132 Atl. 178, 43 A. L. R. 862; *Washington Market Co. v. Clagett,* 19 App. D. C. 12; *Williamson v. Hardy,* 47 Cal. App. 377, 190 Pac. 646.

█ As to the second phase of the problem—whether respondent had notice of the presence of grease on the floor—a more serious question is raised, in view of certain of our own decisions presently to be noticed. There is no proof that respondent had actual notice of the particular spot of grease which appellant claims to have caused her fall. Proof of constructive notice rests solely on the testimony of appellant with respect to the statements made by Miss Malloy above quoted. Evidence of the greasy condition of the floor prior to the date of the accident is competent to show constructive notice. *Randolph v. Great Atlantic & Pacific Tea Co., supra; Kalb v. Fisher, supra; Markman v. Fred P. Bell Stores Co., supra; Washington Market Co. v. Clagett, supra.*

The question is whether appellant's testimony as to Miss Malloy's statement constitutes substantial proof of the fact. Respondent asserts it does not, under the decisions of *Ludberg v. Barghoorn,* 73 Wash. 476, 131 Pac. 1165, and *Jones v. Harris,* 122 Wash. 69, 210 Pac. 22. In those cases, it was held that a case of negligence could not be made solely on proof of verbal admissions of the defendant. There are, however, certain distinguishing features between the facts of those cases and the facts in the case at bar. In both of those

cases, the statements were made some time subsequent to the accident. In this case, they were spontaneous declarations, made at the time of the accident, which tended to explain the cause of it. They were a part of the *res gestae. Samuels v. Hiawatha Holstein Dairy Co.,* 115 Wash. 343, 197 Pac. 24.

Furthermore, the persons to whom the admissions were attributed in the *Ludberg* and *Jones* cases took the stand and denied making them. Here Miss Malloy took the stand, but did not deny making the statements attributed to her by appellant. Under the circumstances disclosed by this record, we think the evidence of her statements, undenied as they were, constitutes substantial proof of constructive notice to respondent of the presence of the spot of grease on the floor. We know of no more convincing proof of a fact than evidence of its admission, when the person to whom the admission is attributed, having the opportunity, fails to deny it.

Under such circumstances, only one inference can be drawn—it must be true, else it would have been denied. 1 Jones Commentaries on Evidence (2d ed.), pp. 156, 157. The author says:

"§ 92. Where evidence has been introduced affording legitimate inferences going to establish the ultimate fact that the evidence is designed to prove, and the party to be affected by the proof, with an opportunity to do so, fails to deny or explain such facts, they may well be taken as admitted with all the effect afforded by the inferences.

"§ 93. The general rule as to the presumption from the failure of a party to testify applies with equal force against a party who testifies in his own behalf but does not deny material evidence against him which it is in his power to contradict. . . . Similarly the failure of a party to deny oral admissions attributed to him creates a strong presumption that he made the admissions; and likewise the failure of a party to deny a con-

versation attributed to him by opposing witnesses raises a presumption against him.''

 The respondent contends that the court erred in not granting its motion for new trial because of instructions given and because it refused to give an instruction requested by it, and also because of excessive verdict. The first instruction complained of is number eight. It is asserted that it imposed a duty as of an insurer on respondent with respect to the condition of the floor. We doubt whether the instruction, when lifted from its context, is susceptible of such interpretation. In any event, when the instructions are read as a whole, they state the law applicable to the facts clearly, concisely and correctly.

The respondent requested an instruction to the effect that knowledge of the presence of the spot of grease could not be attributed to respondent solely on the testimony of the verbal admissions of Miss Malloy. The court gave a cautionary instruction with respect to that testimony. We need add nothing to what we have said with respect to the sufficiency of that evidence to make a case for the jury. There was no error either in the instruction given or in refusing the one requested.

 Medical testimony as to the extent of appellant's injuries resulting from the fall was in sharp conflict. Under the appellant's evidence, the jury was justified in believing that she suffered contusions to one of her knees and displacement of the uterus; that the latter condition caused her much pain and suffering, and culminated in a major operation, the expenses attendant on which amounted to more than five hundred dollars; that, prior to the fall, she was strong and healthy; that she had not completely recovered her former health and strength at the time of the trial (November, 1933). There is nothing in the record to

indicate that the jury was influenced by passion or prejudice. The amount of the verdict in and of itself does not warrant us in assuming that they were—particularly in view of the fact that the verdict was not so large as to invoke the trial court to exercise its discretion of reducing it or granting a new trial.

The judgment is reversed, and the cause remanded with directions to enter judgment on the verdict.

GERAGHTY, TOLMAN, and HOLCOMB, JJ., concur.

BEALS, C. J., dissents.