[No. 25430. *En Banc.* September 13, 1935.]

AGNES SHUMAKER, *Respondent*, v. CHARADA INVEST-
MENT COMPANY, *Appellant*.[1]

STEINERT, HOLCOMB, MITCHELL, and BLAKE, JJ., dissent.

*J. Y. C. Kellogg,* for appellant.

*Harry H. Johnston,* for respondent.

BEALS, J.—During the afternoon of October 23, 1933,
plaintiff, Agnes Shumaker, while walking along an
aisle in the public market owned and operated by de-
fendant, Charada Investment Company, a corporation,
slipped and fell, suffering injuries for which she seeks
compensation in this action. Plaintiff contends that
her accident was occasioned by the fact that the cement
floor on which she was walking was wet; that this con-
dition caused her to slip and fall; and that defendant
was negligent in permitting the floor to become and
remain wet and slippery, and consequently is liable to
her for the injuries which she suffered.

[1]Reported in 49 P. (2d) 44.

Defendant, at the close of plaintiff's case, moved for a nonsuit; at the close of the evidence, it moved for judgment in its favor as matter of law; and, after the return of a verdict for the plaintiff, defendant moved for judgment notwithstanding the verdict; all of which motions were denied. From judgment entered in plaintiff's favor upon the verdict, defendant has appealed.

Error is assigned upon the rulings of the court above referred to, and upon the entry of judgment.

In support of its assignments of error, appellant advances two contentions: First, that the record contains no substantial evidence showing negligence on its part; and second, that it should be held as matter of law that respondent was guilty of contributory negligence. Our view of the law applicable to the facts disclosed by the record renders discussion of the second proposition unnecessary.

Appellant has for some time owned and operated a public market in the city of Tacoma, renting space therein to different merchants for display and sale of their wares. The establishment fronts on Market street, at its intersection with Eleventh street. Along the front of the market, were long narrow tables (used for the display of green vegetables), such as are commonly used for display of such produce, the line of tables being broken by passageways. Back of the tables was a wide aisle, running parallel to Market street, and, on the other side of this aisle, there were other stalls and counters facing on two long aisles lying perpendicular to Market street. Respondent fell somewhere in or very near the aisle lying back of the narrow tables in the front of the market, there being some dispute between respondent and one of her witnesses as to the exact point where respondent met with her accident.

It appears from testimony introduced on behalf of

respondent that the vendors of fresh vegetables, whose places of business occupied the front of the market and bordered on the aisles upon one of which respondent fell, were accustomed to sprinkle water over their merchandise at frequent intervals, and that the floors in that part of the market were, as a result of this practice, often damp or even wet. In addition to using sprinkling cans, the vendors often washed celery and other vegetables in open tubs or buckets, which had a tendency to throw additional water on the floor. Appellant employed a manager, who had under him two janitors, one of whom was always on duty during market hours, whose business it was to keep the floors in good condition, picking up trash found thereon and sprinkling sawdust over wet spots and then sweeping the same away. It was not raining on the day of the accident, so any water which was on the floor must have come from within the market itself.

Respondent entered the market from an adjoining store. She testified that she proceeded down one of the long aisles toward Market street, stopping at a stall to make a purchase. The clerk being busy, respondent walked over toward the vegetable stands above referred to, when suddenly she slipped and fell violently to the floor. Respondent was assisted to a box, where she sat down, and while in that position, she saw that the floor where she had fallen was wet. Her feet had left a mark upon the floor, indicating where her foot had slipped.

The floors of the market were ordinary cement floors, and it is not contended that there was any unusual hazard incurred by patrons walking over them, respondent arguing only that the floor was slippery because at the place she fell it was wet.

There is some testimony in the record to the effect that appellant's agents had been advised of the fact

that the floors of the market were frequently wet and were, in consequence, slippery. On the other hand, it is not disputed that appellant's employees devoted considerable time to cleaning and mopping the floors and generally caring for the comfort, safety and convenience of patrons of the market. From four to six thousand persons walked through the market each day, as many as twelve thousand visiting it on exceptionally busy days.

Respondent had visited the market on many occasions previous to the date of her injury, and had never noticed any water on the floor of the aisles near the point she fell. Respondent knows little of the accident which resulted in injuries to her, save that she slipped and fell, and that, after she had been assisted to a neighboring seat, she noticed that the spot where she fell was wet. It may be assumed that the floor of the market was often wet, as the result of the use of water by the merchants in freshening their wares, as above set forth. On rainy days, doubtless the floor would be wet both from seepage and from water carried in by patrons.

■ It is true, as argued by respondent, that, in passing on a motion for judgment notwithstanding the verdict of a jury, no element of discretion is involved. Such a motion may be granted only when it can be judicially determined, as matter of law, that there is neither evidence nor reasonable inference from evidence to sustain the verdict. *Nelson v. Booth Fisheries Co.*, 165 Wash. 521, 6 P. (2d) 388; *Sears v. Lydon,* 169 Wash. 92, 13 P. (2d) 475; *Reeve v. Arnoldo,* 176 Wash. 679, 30 P. (2d) 943. It is also true that, in ruling on such a motion, the evidence will be viewed in the light most favorable to the party who won the verdict. *Green v. Langnes,* 177 Wash. 536, 32 P. (2d) 565.

■ It is undoubtedly the law that one who oper-

ates a store or place for the general sale of merchandise invites the public to frequent his place of business, and that he owes to his patrons the duty to maintain his establishment in a reasonably safe condition. What is a reasonably safe condition, of course, depends upon the nature of the business conducted and the circumstances surrounding the particular situation. In the case of *Stone v. Smith-Premier Typewriter Co.,* 48 Wash. 204, 93 Pac. 209, this court laid down the rule as follows:

"The law requires a storekeeper to maintain his storeroom in such a condition as a reasonably careful and prudent storekeeper would deem sufficient to protect customers from danger while exercising ordinary care for their own safety."

In the case at bar, the jury inspected the premises and, of course, in returning their verdict, were entitled to consider the evidence in the case in the light of the knowledge which they gained during such examination.

Respondent relies upon the case of *Wiard v. Market Operating Corp.,* 178 Wash. 265, 34 P. (2d) 875, in which a recovery was allowed in favor of an invitee of a market, who slipped and fell on the floor of an auditorium in the market maintained by the owner for the benefit of his tenants. In the superior court, a jury returned a verdict for the plaintiff, which the trial court set aside in granting the defendant's motion for judgment notwithstanding such verdict. On plaintiff's appeal, this court reversed the judgment of dismissal and directed the entry of judgment on the verdict in plaintiff's favor. In the case cited, it appeared from the evidence that the auditorium was used as a lunch room, one end being equipped for cooking, the floor of the auditorium being covered with tables and chairs. The plaintiff testified that she slipped on a spot of grease, and this court held that evidence that the floor

of such a room was in places greasy entitled the jury to pass upon the question of the negligence of the owner of the market. There was evidence to the effect that an employee of defendant had admitted that the floor was in a dangerous condition, and that food was often dropped thereon.

In the case at bar, an entirely different situation is presented. Assuming that the floor of the aisles in appellant's market was often damp or wet, can it be held that this constituted a dangerous condition, and one so liable to cause injury to appellant's patrons as to render appellant responsible to respondent in damages? Respondent testified that she had walked along the aisle upon which she fell on hundreds of occasions prior to the day she was hurt, and she was consequently thoroughly familiar with the situation. If the floor was wet, it must be held that she should have observed this condition. Respondent did not, as did the plaintiff in the *Wiard* case, *supra,* slip upon a small greasy spot, which she might well have not observed, but, on the contrary, respondent was at great pains to prove that much of the floor of the market was generally wet, and, indeed, that this was its common and ordinary condition.

In the case of *Cornwell v. Kresge Co.,* 112 W. Va. 237, 164 S. E. 156, the supreme court of West Virginia denied recovery to a woman who suffered a fractured wrist as the result of a fall on a wet and oily floor in a store which she had visited as a customer. The court of errors and appeals of New Jersey, in the case of *Abt v. Leeds & Lippincott Co.,* 109 N. J. L. 311, 162 Atl. 525, denied recovery to a guest of a hotel, who, while descending a flight of stairs, which it was testified were waxed and highly polished and very slippery, fell and was injured. The court held that, there being no evidence that the stairs were improperly con-

structed, that the waxing or polishing was improper, or that the stairs had been left in any other condition than is usual in waxed or polished stairs or floors, the plaintiff could not maintain her action.

In the case of *Bridgford v. Stewart Dry Goods Co.,* 191 Ky. 557, 231 S. W. 22, the court of appeals of Kentucky denied recovery to a patron of a department store, who slipped and fell on a wet basement floor, which, she contended, was in an unsafe condition and which she should have been warned not to use. In the case cited, it appeared that the water had been thrown upon the floor without fault of the owner of the premises, but the court held that the plaintiff could not recover, she having noticed that the floor was moist before she attempted to walk thereon. In the course of its opinion, the court said:

"Certain it is that the mere fact the floor was moist or damp did not render it so dangerous as to require of defendant in the exercise of ordinary care for the safety of its customers that it should place barricades across the entrance to the basement and prevent its use altogether until the floor was entirely dried out. We are inclined to the opinion that proof simply that an ordinary wood floor in a well lighted room is moist or damp is no evidence that it is not in a reasonably safe condition for use, but, if mistaken in that, we are quite sure that one who uses such a floor with full knowledge of its condition assumes any and all risks incident to its use. We are therefore of the opinion that the trial court did not err in directing a verdict in favor of the defendant."

In the case of *Kraus v. Wolf,* 253 N. Y. 300, 171 N. E. 63, the court of appeals of New York held that

"A small pool of water in a slight depression, caused by wear, on the surface of an outdoor step, creates no dangerous condition, and reasonable care did not require the defendant to prevent or remedy such condition,"

and reversed a judgment entered upon the verdict of a jury in favor of a woman claiming injury as a result of the condition referred to.

In the later case of *Miller v. Gimbel Bros.*, 262 N. Y. 107, 186 N. E. 410, the court of appeals of New York held that a lady who slipped and fell as she was about to enter defendant's store was, as matter of law, not entitled to recover for the injuries which she suffered. It appears that a short entrance way led from the street to a revolving door. The floor of Tennessee marble sloped downward. On the day of the accident, it had been raining, and the floor was wet, some mud having accumulated in the corner of the revolving door. In the course of its opinion, the court said:

"The cause of plaintiff's fall is not shown by any direct evidence. It does not appear that the plaintiff slipped upon the mud at the door or that the movement of the door was impeded. We may assume that rainwater may make the smooth sloping floor somewhat more slippery than if the floor were dry. None the less it does not appear that the floor even when wet was dangerous. The owner of a store must take reasonable care that his customers shall not be exposed to danger of injury through conditions in the store or at the entrance which he invites the public to use. He cannot prevent some water and mud being brought into an entranceway on a rainy day and he is not responsible for injuries caused thereby unless it is shown that the construction of the store is inherently dangerous or that he failed to use care to remedy conditions which had become dangerous, after actual or constructive notice of such conditions. That has not been shown here."

The judgment in favor of the plaintiff entered on the verdict of a jury, which had been affirmed by the appellate division, was reversed and the action dismissed.

The appellate division of the supreme court of New

York, in the case of *Abbott v. Richmond County Country Club,* 211 App. Div. 231, 207 N. Y. Supp. 183, reversed a judgment entered upon the verdict of a jury in favor of one who slipped on a concrete floor bearing a smooth finish, which had been stained and then covered with a fine coating of linseed oil to prevent dust. It appeared from the testimony that other persons had slipped and fallen upon the floor prior to the accident to plaintiff, and that the fact that persons had slipped on the floor had been reported to the superintendent. The court unanimously held that

"Such a condition as is presented in the case at bar is not sufficient to charge a reasonably prudent person with the duty of foreseeing that one in the exercise of ordinary care using the floor would be exposed to danger,"

and reversed the judgment of the trial court, holding as matter of law that the plaintiff could not recover. The decision of the appellate court was affirmed by the court of appeals of New York, 148 N. E. 762.

The supreme court of Ohio, in the case of *Kresge Co. v. Fader,* 116 Ohio St. 718, 158 N. E. 174, 58 A. L. R. 132, held that a judgment in favor of a lady who suffered damages as a result of a fall, which judgment had been affirmed by the court of appeals, should, as matter of law, be reversed and the action dismissed. It appeared that the plaintiff entered the defendant's store upon a rainy day, the floor immediately inside of the door being wet and somewhat slippery, due to the fact that customers had carried in water from the sidewalk, some rain also having blown in as the door was, from time to time, opened. The court states that the evidence showed that the floor was wet enough to be slippery. The court held that no negligence was proven, and that the owner of the premises was entitled to judgment in his favor.

The United States circuit court of appeals for the fifth circuit, in the case of *Batson v. Western Union Telegraph Co.,* 75 F. (2d) 154, affirmed a judgment of the district court based upon an instructed verdict in defendant's favor entered at the close of plaintiff's testimony. Plaintiff testified that she entered the defendant's telegraph office just as a janitor had "finished oiling or mopping the floors." Plaintiff testified that she used due care, because she noticed that in places the floor was damp, but notwithstanding this, as she entered, her foot slipped and she fell and was injured. The court affirmed the ruling of the district court, saying, in the course of its opinion:

"Here there was no foreign substance wrongfully on the floor, lying unobserved there to make a secret hazard known to the proprietor, unknown to the customer, as there was in the case where meat had been dropped and left to lie, or where ice had been allowed to accumulate in an entrance way to form a slippery surface. Neither is this a case of a slippery condition caused by washing and oiling floors in a manner and under circumstances causing danger of which the proprietor knew and the customer did not."

The opinions of the supreme court of Missouri, in the case of *Vogt v. Wurmb,* 318 Mo. 471, 300 S. W. 278, and the appellate court of Illinois, in the case of *Jones v. Kroger Grocery & Baking Co.,* 273 Ill. App. 183, are also in point in this connection.

We are of the opinion that no primary negligence was, in this case, proven against appellant. Assuming that appellant knew that water was frequently splashed upon the cement floors of the market, and that these floors were often damp or even wet, it cannot be held that a wet cement floor constitutes such a dangerous condition as to hold the owner maintaining the same responsible as for negligence to one who slips thereon. A wet cement surface does not create a con-

dition dangerous to pedestrians. It is a most common condition, and one readily noticed by the most casual glance.

We conclude that the trial court erred in overruling appellant's motion for judgment in its favor notwithstanding the verdict, and the judgment appealed from is accordingly reversed, with instructions to dismiss the action.

MILLARD, C. J., TOLMAN, GERAGHTY, and MAIN, JJ., concur.

STEINERT, J. (dissenting)—Although there are two questions in this case, the prevailing opinion discusses and rests upon but one. Since that is the crucial question here, however, I shall, likewise, limit myself to the same question. That question is whether there was sufficient evidence to sustain the verdict.

Although the appellant made a motion for new trial as well as for judgment notwithstanding the verdict, the motion for new trial was not passed upon by the court, and the assignments of error are based exclusively on the denials of the motion for nonsuit, the motion that the case be taken from the jury and judgment entered for defendant [appellant], and the motion for judgment notwithstanding the verdict. Since the appellant did not stand upon its motion for nonsuit but proceeded to introduce evidence, the matter must now be viewed from the standpoint of the motion to take the case from the jury and enter judgment for defendant, and the motion for judgment notwithstanding the verdict. *Alkire v. Myers Lbr. Co.*, 57 Wash. 300, 106 Pac. 915; *Olsen v. Peerless Laundry*, 111 Wash. 660, 191 Pac. 756; *State v. Brown*, 178 Wash. 588, 35 P. (2d) 99.

Coming to the one question here involved, the majority opinion frankly concedes that it is the settled

rule in this state that, in passing on a motion for judgment notwithstanding the verdict of a jury, no element of discretion is involved; that such motion may be granted *only* when it can be judicially determined, *as a matter of law,* that there is neither evidence nor reasonable inference from evidence to sustain the verdict; and that, in ruling on such motion, the evidence will be viewed in the light most favorable to the party who *won* the verdict.

A very important factor in this case, and one that must not be lost sight of, is that the jury viewed the premises (at appellant's own request) and saw the condition of the floor of the market at the time of the trial. The jury, therefore, was able to observe whether the floor was smooth or rough and particularly whether it had become worn to such a degree as to form depressions that would permit water to collect and stand in pools. If water was actually standing in pools at the time, further observation would, of course, be unnecessary. If the floor happened to be dry at the time, the jury could then by inspection determine whether there were, nevertheless, depressions in which water would collect. In either event, the jury actually saw what this court cannot, from the record, see.

Now, it does appear from the record that the market had been built in 1929, and that from four thousand to six thousand people frequented it daily, and that, on exceptionally busy days, as many as twelve thousand people visited it. What the effect of that many people tramping the floor daily would have upon it in that length of time, was something that could best be determined by looking at it, which the jury did.

The record is replete with evidence to the effect that the Japanese tenants not only used sprinkling cans throughout the day, but also at various times placed wooden tubs, containing water, in the aisles, and that

water for the cans and tubs was obtained from a faucet in the immediate vicinity. The record also shows, by the testimony of a number of witnesses, that water was allowed to run over and stand in the aisles to such an extent that, unless customers had on good shoes, their feet would get wet.

The majority opinion even concedes that there was ''some testimony in the record to the effect that appellant's agents had been advised of the fact that the floors of the market were frequently wet and were, in consequence, slippery.'' That it was slippery, is shown by the fact that, when respondent fell, her heel left a skid mark from one and one-half to two feet long. Appellant admitted in its answer that,

'' . . . at times said vendors [the Japanese] wash celery and other vegetables in open tubs and buckets filled with water in said aisle or walk-way, and that water from said tubs slops over on said aisle or walk-way, making the same damp or wet,''

but asserted that this practice took place exclusively early in the morning, and that thereafter, prior to noon of each day, all wet and damp places in the aisles were covered with sawdust, which absorbed the water and left the aisles substantially dry.

This admission by the appellant was communicated to the jury in the instructions given by the court, and whether the practice of allowing water to run over the aisles was confined to the forenoons or continued through the afternoons became a question of fact on which the evidence was in conflict. It is a fact that the janitors made their rounds of the market in the *afternoons,* and it is also a fact that, almost immediately after the respondent was injured, a janitor appeared and put sawdust on the spot. So it must have been wet at the time. The janitors made their rounds every half-hour, which, for argument sake, it may be con-

534

ceded was often enough for the discharge of their ordinary duties.

But the negligence of the appellant consisted in what the jury may have found to be a defect in the floor, one that would permit water to collect in pools. If that was the case, then half-hourly inspections were not a sufficient protection to the public, whose visitations were constant. A dangerous condition is not alleviated by periodic inspections. Between inspections, many accidents could happen, just as this one happened. The law upon the subject of the duty of storekeepers is as stated in *Stone v. Smith-Premier Typewriter Co.*, 48 Wash. 204, 93 Pac. 209, from which the majority opinion quotes as follows:

"The law requires a storekeeper to *maintain* his store room in such a condition as a reasonably careful and prudent storekeeper would deem sufficient to protect customers from danger while exercising ordinary care for their own safety." (Italics mine.)

The duty is to *maintain* the premises in such a condition as a reasonably careful and prudent storekeeper would deem sufficient, not simply to make a periodic inspection of what may be an unsafe condition. Moreover, it is not the law that a storekeeper may permit a dangerous condition to exist and then excuse it by saying that reasonably careful and prudent storekeepers would permit such condition to continue. In any event, it would be for the jury, and not for the court, to say whether, under the evidence, the condition was such as reasonably careful and prudent storekeepers would deem sufficient to protect their customers.

The gist of the majority opinion appears to be contained in a statement put in the form of an interrogatory, as follows:

"Assuming that the floor of the aisles in appellant's market was often damp or wet, can it be held that this constituted a dangerous condition, and one so liable to cause injury to appellant's patrons as to render appellant responsible to respondent in damages?"

The opinion does not answer the question directly, but, after quotation from a number of authorities thought to be controlling, concludes by saying:

"We are of the opinion that no primary negligence was, in this case, proven against appellant."

Coming directly to the question propounded by the majority, the answer to it is, in my opinion, simply this: The court may not say, *as a matter of law,* that such a condition was dangerous or one so likely to cause injury to appellant's patrons as to render appellant responsible in damages; *neither* can the court say, *as a matter of law,* that such a condition was *not* dangerous and would *not* render appellant liable. It was a question of *fact* for the jury to determine, under the circumstances shown by the evidence. A part of that evidence was the physical condition of the floor as found by the jury on inspection. The jury did the very thing that it was called upon to do, namely, to determine whether, under the circumstances, it was dangerous to permit the floors to remain wet and damp to the extent, as the jury may have found, that water was allowed to collect in pools.

On the motion for judgment notwithstanding the verdict, the trial court, who heard and saw the witnesses, determined that there was evidence to sustain the verdict and, therefore, evidence from which the jury could conclude that, under the circumstances, the condition was so dangerous as to render appellant liable.

In the face of all that, this court, which has neither seen the premises nor heard nor seen the witnesses,

says, *as a matter of law,* that the condition, under all the circumstances, and contrary to the finding of the jury, was not so dangerous as to render appellant liable. It seems to me that this court has either invaded the province of the jury or else that it must be held that a slippery condition occasioned by water can never be considered as the product of negligence. It must be conceded that a broken hip occasioned by slipping on a wet floor is just as serious as one occasioned by slipping on a greasy floor. And it should also be conceded, I think, that, if a storekeeper negligently permits water to collect or stand on his premises to which the public is invited, when by reasonable care he could have prevented it, he should be liable.

I shall now briefly refer to the cases considered in the majority opinion upon the subject under discussion.

In *Wiard v. Market Operating Corp.,* 178 Wash. 265, 34 P. (2d) 875, a woman sustained an injury by slipping on ''a grease spot, or something,'' as it was described in the evidence. The court held the evidence sufficient to take the case to the jury. This court attempts to distinguish that case from this on the ground that there the floor was greasy, while here it was only wet. The fallacy of the court's reasoning, it seems to me, lies in the fact that it holds that grease may be slippery, while water, under any circumstances, cannot be. The question in a given case is not what the substance that causes the slippery condition is, but whether the slippery condition, no matter how caused, is the result of negligence.

The next case is *Cornwell v. Kresge Co.,* 112 W. Va. 237, 164 S. E. 156. The opinion in that case clearly shows that the customer saw the condition of the floor, realized that it was slippery, but continued to make use of it. There is no such evidence here. The re-

spondent positively testified that she did not note the condition of the floor and did not realize that it was slippery.

The next case is that of *Abt v. Leeds & Lippincott Co.,* 109 N. J. L. 311, 162 Atl. 525. In that case, a guest at a hotel slipped while descending a stairway. But, as the court stated in its opinion, there was no evidence that the stairs were out of repair, or that the polishing had been done in any improper manner. In fact, the plaintiff therein testified that the stairs were finished in the same way as the floors in the place where she customarily walked. Here, the jury, having seen the floor, may have seen and found that it was worn to such an extent as to permit the collection of water, causing a slippery condition. If so, how could it be said that the floor was maintained in a proper condition?

The case of *Bridgford v. Stewart Dry Goods Co.,* 191 Ky. 557, 231 S. W. 22, presents a state of facts that immediately distinguishes it from this. In that case, a basement in a department store had become flooded with water to a depth of an inch. It was conceded by plaintiff that the condition was not due to defendant's negligence. Within a few minutes after the flood occurred and while the janitors were engaged in mopping the floor, plaintiff, who saw the wet condition, walked across the floor and slipped. But in the case before us, we have a condition for which appellant itself was responsible; the floor was not being repaired at the time of the accident, and the respondent was not aware of the condition of the floor.

The case of *Kraus v. Wolf,* 253 N. Y. 300, 171 N. E. 63, contains a short *per curiam* opinion reading as follows:

"A small pool of water in a slight depression, caused by wear, on the surface of an outdoor step, creates no

dangerous condition, and reasonable care did not require the defendant to prevent or remedy such condition.''

Whether the action was against a shopkeeper or the owner of a private residence, is not disclosed. Whether the plaintiff was an invitee for business purposes, or a casual caller, or a trespasser, we are not told. Whether it was raining at the time or whether the sun was shining, does not appear. In any event, it was an outdoor step, and not inside the building at all. That case has no bearing upon the facts presented in this case.

The next case is that of *Miller v. Gimbel Bros.*, 262 N. Y. 107, 186 N. E. 410. In that case, there had been a heavy rainfall, causing the floor of an entrance-way to a department store to become wet; there was also some mud in the corner of a revolving door in the entrance. As shown by the quotation in the majority opinion, it did not appear that the plaintiff had slipped on the mud. It also appeared that there had been a heavy rainfall on that day, and that the owner was not responsible for the water being brought into the entrance. But more than that, it did not appear that any defect in the construction or condition of the floor had caused the water to collect or stand in pools. There was no evidence that the floor, when wet, was dangerous. In the case at bar, there was testimony, as the majority opinion concedes, that appellant's agents had been advised that the floors of the market were frequently wet and were, in consequence, slippery.

The case of *Abbott v. Richmond County Country Club,* 211 App. Div. 231, 207 N. Y. Supp. 183, contains this significant statement:

''No actual *defect* in the floor was claimed upon the trial other than that it was smooth and slippery, though the plaintiff had used it upon several prior occasions and *knew of its condition.''* (Italics mine.)

It was shown that the flooring was the customary one used in golf club locker rooms, and that it had been covered with linseed oil to prevent dust. There was no evidence of any defect in the floor. In the case at bar, the worn condition of the floor was directly in issue.

The next case cited is that of *Kresge Co. v. Fader,* 116 Ohio St. 718, 158 N. E. 174, 58 A. L. R. 132. Here, again, it appeared that the wet condition of the floor had been created by persons over whom the defendant had no control; that the plaintiff herself had been walking in the rain and knew that her own shoes were wet when she entered the store; and that there were no defects in the floor itself. That is not the situation in the case before us.

In *Batson v. Western Union Telegraph Co.,* 75 F. (2d) 154, the injured party saw the employee of the defendant with a pail containing an oily substance, and knew that he had just oiled and mopped the floor. She also saw the very condition of which she subsequently complained. That made a wholly different case from that with which we are here concerned.

In *Vogt v. Wurmb,* 318 Mo. 471, 300 S. W. 278, the plaintiff entered defendant's market by way of a flight of four steps which had been freshly painted and then covered with boards to protect the paint until it dried. The steps were in good condition, and there was a hand-rail running along their side. Upon leaving the market, plaintiff returned by way of the steps and, in doing so, slipped on one of the boards. The court observed that the method of protecting freshly painted steps by laying boards thereon was one commonly used, that they were not inherently dangerous, and that the condition was perfectly obvious to plaintiff. Upon that state of the evidence, the court held that the owner was not liable. Again, we note that there was

no defective condition in the premises, that the appliances used were those commonly employed, and that the plaintiff was actually aware of the condition. We do not have that situation in this case.

The last case cited is that of *Jones v. Kroger Grocery & Baking Co.*, 273 Ill. App. 183. There the plaintiff supposedly slipped on a small piece of spinach on an otherwise clean and open floor of a grocery store. The owner did not know of the presence of the spinach on the floor. The court held that negligence had not been shown. Manifestly, the decision was correct, because there was no evidence of knowledge, actual or constructive. Here, we have evidence of the previous condition of the floor, and knowledge on the part of the appellant.

I have analyzed all the cases on which the majority opinion relies, and assuming that they were all correctly decided, I do not see how they are applicable here.

In this case we have as an issue the worn condition of the floor; we have an admission that tubs of water were placed in the aisles and that the water slopped over and rendered the aisle wet; we have evidence that the water on other occasions stood in the aisle; we have evidence that there was a pool of water in which respondent stepped; we have evidence that janitors were supposed to keep the aisles dry; and we have evidence from which it may be inferred that the jury found the floor to be in such condition as would permit the water to stand in pools. How can it be said, in the face of all that evidence, that there was neither evidence nor reasonable inference from evidence that appellant was negligent?

It is suggested in the prevailing opinion that, if water was present on that occasion, respondent herself could have, and should have, seen it. It is not sug-

gested that respondent was guilty of contributory negligence. The opinion does not assert, nor could it assert, that respondent was guilty of contributory negligence, because that would assume primary negligence on the part of appellant, which the opinion emphatically denies. But more than that, the court instructed the jury that a customer in a market under cover was not required to exercise the same degree of care as to where she was walking, or to observe the condition of the floor therein, as she would be required to exercise upon an open sidewalk or street; that the invitation to enter the building was for the very purpose of having the eyes of the customer attracted to goods on display. No error is assigned upon the instruction, and it must, therefore, be taken as the law of the case.

I am convinced that there was evidence to take the case to the jury, and sufficient evidence to support the verdict. I therefore dissent.

HOLCOMB, MITCHELL, and BLAKE, JJ., concur with STEINERT, J.