Elick D. TITTMAN, Appellant,

v.

GREAT NORTHERN RAILWAY COM-
PANY, Appellee.

No. 15479.

United States Court of Appeals
Ninth Circuit.

Jan. 10, 1958.

Rehearing Denied March 31, 1958.

Nels Peterson, Gerald H. Robinson, Portland, Or., Paul K. Cooney, Spokane, Wash., for appellant.

Clark A. Eckart, Woodrow L. Taylor, Seattle, Wash., Harry T. Davenport, Spokane, Wash., for appellee.

Before HEALY, POPE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

Tittman, a brakeman, was injured in the Great Northern Hillyard yards at Spokane, Washington, on June 3, 1955. He was on duty as an employee of the company and tripped on a coil of small wire which was somewhat rusted and lying along the tracks where his duty took him. That he was injured by wire where he says he was is established. He asserts he was seriously injured, but the district judge who heard the evidence thought the injuries were somewhat minor. Reduced to a few words, recovery was actually denied upon the ground of a failure of proof as to how and when the wire got to the place where Tittman became entangled with it.

This case under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. was judge-tried. Plaintiff appeals. The errors claimed are, first, that the trial court was wrong in rejecting the doctrine of res ipsa loquitur and, second, it failed to find for the plaintiff. More

and more rare are the cases denying liability under this act. However, they can still happen. See Herdman v. Pennsylvania Railroad Co., 352 U.S. 518, 77 S.Ct. 455, 1 L.Ed.2d 508, where the trial court directed a verdict, the Court of Appeals affirmed, and the Supreme Court, after granting certiorari, affirmed.

After hearing the evidence, it is apparent that the trial judge here believed he could find no satisfactory basis to establish fault on the part of the railroad. As it occurs to us, now the problem is whether or not the trier of facts said so much that he succeeded in compromising his decision.

On December 14, 1956, the oral decision was announced as follows:

"The Court: I never have derived any pleasure from keeping everyone in suspense in a case of this kind until I have given the reasons for my decision and I think it serves no useful purpose, so I will say bluntly at the outset that I have come to the conclusion, not without considerable difficulty, I must say, that the evidence is not sufficient here to show liability of the defendant railroad company under applicable rules of law as I understand them. It is a difficult decision to make and I can understand the reluctance of juries to find against plaintiffs in a case of this kind, not because I think they are inclined to favor an individual against a corporation—I don't think there is any great feeling of that kind in this country—but there is a feeling that is difficult to escape even for one who is trained in making hard decisions on facts and law. There is a feeling that is hard to escape—the workman who without fault on his part is injured in the course of his employment should be compensated.

"But I don't make the laws, I only have to interpret them and apply them, and here Congress has seen fit to give us not industrial insurance, such as we have for workmen generally in the State of Washington engaged in extra hazardous employment, but the right of a workman working for a railroad company to recover if he is injured due to negligence on the part of his employer which proximately in part results in his injury. The law, as we all know, of course, has eliminated offenses of fellow servant negligence and assumption of risk, and instead of making contributory negligence a defense, has provided that it only operates to reduce the amount of the recovery, and the law, as I think I have mentioned before, has been liberally construed, but it is still a negligence case, it is based upon negligence, and the Supreme Court has said so, the Court of Appeals in the Mely case has said so, Northern Pacific Ry. Co. v. Mely [219 F.2d 199], in which a very large verdict for the plaintiff was set aside, and Judge Fee, who wrote the opinion for the Court of Appeals, said, and while the facts, I grant, are very different there than they are here, he said they cannot be recovered without fault and in a footnote he quoted Justice Douglas, who certainly is very favorable toward liberal construction of this act, Justice Douglas says that the railroads are not insurers but there must be proof of negligence by the plaintiff by a fair preponderance of the evidence.

"Now I just read briefly from this Tenant against Peoria & Pekin Union Railway, a case that is reported in 321 U.S. 29, and beginning on page 32 [64 S.Ct. 409, at page 411, 88 L.Ed. 520], the opinion states that:

" 'In order to recover under the Federal Employers' Liability Act, it was incumbent upon petitioner to prove that the respondent was negligent and that such negligence was the proximate cause, in whole or in part, of the fatal accident,'

"and then citing another case.

" 'Petitioner was required to present probative facts which which (sic) the negligence and the causal (sic) relation could reasonably be inferred. The essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.'

"Now, the negligence, I think, and the duty of care here is not an extraordinary one. It isn't any different from that of any other owner or proprietor of premises who has the duty of maintaining the premises in a reasonably safe condition, and I don't think there is any other rule or different rule that should be applied here under the requirement that the railroad furnish the workman a reasonably safe place to work than would be the case of a store where the patrons come in and use the aisles as this brakeman was required to use the spacing between the tracks in the performance of his duties, and I think counsel has called attention, Mr. Taylor called attention to a late case by the Washington State Supreme Court which deals with the rule as the common law rule which I think is applicable here, and that is the case of Mathis against the [H. S.] Kress Company, 38 Wash.2d 845, and the short excerpt that I have that I shall read is [on] page 847 [232 P.2d 921, on page 922]:

" 'It is the well-established rule that, where the negligence of a storekeeper is predicated upon his failure to keep his premises in a reasonably safe condition, it must be shown that the condition has either been brought to his attention or has existed for such time as would have afforded him sufficient opportunity, in the exercise of reasonable care, to have become cognizant of, and to have removed the danger.'

"One of the cases cited there is Smith v. Manning's, 13 Wash.2d 573 [126 P.2d 44], and Smith v. Manning's also announces and applies that rule but finds that the evidence is sufficient in that case, and the opinion, incidentally, is by Driver, Judge, and I have a friend who is a District Judge in one of the California districts who seems to be very fond of citing his own opinions and we'll say his name is Judge Jones. He will say, "See Judge Jones," or "See Jones, Judge, on Negligence" in such and such a law review. So I am citing Driver, Judge, here, and the rule as stated there is very much as was stated in the later case. This case, by the way, is reported in—I think I said 13 Wash.2d 573—and I am reading now from page 580 [of 13 Wash.2d, from page 47 of 126 P.2d] of the opinion:

" 'Respondent contends, however, that in any event, a new trial should not be granted for the reason that, as a matter of law, appellant is not entitled to recover. The contention is based principally upon the well-established rule that, where the negligence of a storekeeper or restauranteur is predicated upon his failure to keep his premises in a reasonably safe condition, it must be shown that the condition has either been brought to his notice or has existed for such time as would have afforded him sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger.'

"And a number of cases are cited there, and then I think this next paragraph will clearly demonstrate the difference between the facts in that case and this. That was a case in which a woman fell on a piece of pickle on the floor in Manning's Restaurant in the space provided for patrons to have their lunches. They brought part of their lunches and

bought their coffee there at Manning's and they had somebody on duty there all the time to keep the debris off the floor, because people were constantly bringing their own lunches, dropping crumbs and bits of food on the floor.

"This next paragraph:

" 'At the time of appellant's accident, an employee of respondent was in the aisle where she fell, charged with the duty of keeping the floor clear of refuse. From the condition which appellant described, the debris must have been accumulating on the floor for a considerable time. As stated, none of respondent's employees could say that the floor had been swept that morning. The bus boy stationed in the aisle, charged with the duty of keeping it clean, the jury could have found, knew of the hazardous condition, or, at least, should have known, in ample time to remove the danger. The debris on the floor could hardly have escaped his notice, according to appellant's testimony, although, as we have pointed out, it was not so apparent as necessarily to attract her attention.'

"Now, I am not going to try to review the cases cited by plaintiff here. I will refer to the late Supreme Court case that was just decided last March, and that is the case of Schulz v. Pennsylvania Railroad Company, and that is reported in 350 U.S. 523 [76 S.Ct. 608, 100 L.Ed. 668]. There I think the facts are quite different. There wasn't any question about the proof of negligence, the only question was whether the finder of the facts could draw a reasonable inference or proximate cause, that is, if the negligence proximately resulted in the death of the decedent, from the evidence which was adduced. This man, who was a tugboat fireman, was required by his employer and directed by his employer to take care at night of several tugboats.

Obviously, not a sufficient number of employees had been furnished so that he had to go from one to the other, sufficient light was not furnished, and in the semi-darkness he had to move about and go from one of these tugs to another moored to the dock with the ice accumulated on their decks, and his body was found partially dressed, and he had a flashlight clutched in his hand, and the court said there that, although, of course, it could be assumed that he may have fallen from some part of the deck where there wasn't ice, that a reasonable inference could be drawn that he was groping his way about with a flashlight and slipped on the icy deck and went overboard, and that, therefore, the negligence which was established could be said to proximately have resulted in his death.

"Now here, it seems to me, I need say very little about the doctrine of res ipsa loquitur; the elements are just not present here, it is not applicable. This wire could have been misplaced without negligence on the part of the railroad company, and I say that having fully in mind that this is the railroad company's premises and that ordinarily we may assume only its own workmen are there, at least so far as car repairs are concerned, and I suppose the operation of a train. But I think it was the plaintiff who testified, and I feel the same way about it, he didn't know how long the wire had been there and he didn't know how it got there, and nobody does. It may have been there for an hour, it may have been there, so far as we know, for several days, although the testimony here is that there was an inspection that day and there could have been an inspection.

"Now, I don't think there is evidence, certainly there isn't a preponderance of evidence here, that there is any negligence in the failure to inspect, because the plaintiff was unable to show when the last

inspection was made and the undisputed testimony of the defendant here is that it was inspected that day, and it could have been, that is entirely consistent with the circumstantial facts.

"Now, applying this doctrine that it must be shown that the wire was there for a sufficient time for the defendant to have seen it, or in the exercise of reasonable care to have known that it was there, we just can't say that that has been established, because we don't know how long, no proof as to how long it was there, and I don't believe that a reasonable inference can be drawn that because it was there, that it was placed there negligently by some agent or employee of the defendant company, and I say that having in mind that only the company's agents were working there and also that if it was voluntarily placed there, if it was purposely placed there, it would be bad railroading and would constitute negligence. But it could just as well have fallen from the car or been jarred off or kicked off accidentally without any negligence then upon anybody's part and be there only a short time before the plaintiff tripped on it, so far as the proof in this case shows, and it seems to me that it is drawing the line entirely too thin to say that because it was rolled up in some manner or bunched up, that we may assume that human hands had done that and placed it there, because you go out to the city dump here or any place where wire and debris and junk are collected or any junk yard, you will find that it is in bunches and rolls; it has a tendency to coil up rather than to remain in a straight line; at least that has been my experience and observation, and there was no evidence here to the contrary, certainly.

"And, also, I don't think the plaintiff can hang his hat on the circumstance that the wire was rusted, because it would have rusted on a flat car or it might have rusted before it got on the car and got off again, so that rust means only exposure to the air and elements and moisture for a comparatively short period of time to make wire that is not galvanized show rust.

"Now, I can well understand the disappointment of a litigant and his counsel in a case of this kind, but I have no alternative, I have, to use the vernacular, to call them as I see them. I don't suppose that it would help very much to hand out any sops or attempted comforts to the plaintiff and his counsel. I will say this, however, and I can say it with all sincerity, that I think that this case was very well tried; that plaintiff's counsel did an excellent job of presenting his case and presented everything there was and even tried to present a little more and the Court has had to sustain objections from time to time.

"I do honestly feel, too, that it is my honest judgment that if I gave a verdict for this plaintiff, it wouldn't stand up in the Court of Appeals. I just don't think it is thick enough to hold up on appeal, and certainly if a substantial judgment were given, it would be appealed by the defendant. I assume. I assume that not in explanation of my decision, because a trial judge, if he is worth his salt, decides them regardless of what might be done by a higher court, we just have to forget about that, but I mention that only as something that might be a consideration so far as the plaintiff is concerned.

"I am going to base this decision on the insufficiency of the evidence and grant the motion to dismiss that Mr. Taylor has made, so that I am not basing it on any conflict in the evidence or making any findings other than the evidence, viewed in the light most favorable to the plain-

tiff, was insufficient to show that the injuries of the plaintiff proximately resulted from any negligence on the part of the defendant. That means, of course, incidentally, that counsel is entirely relieved of the responsibility for not demanding a jury, because on that basis, I would not have submitted the case to the jury, it would have been decided as a matter of law and would necessarily have had to be, had a jury been impaneled in the case.

"One other thing, of course this decision makes it unnecessary for me to go into the question of the amount of damages and so I am not going to talk about the evidence on that except that I will say this—and I haven't been sure about this case; I have considered it both ways and didn't make up my mind what to do until this morning—but I have, of course, followed the testimony as it came in here, and if I had found for the plaintiff, I would have been obliged to find that he didn't have a compressed fracture of a vertebra or a ruptured or protruding disc or degenerative process in the intervertebral space, but a sprain, and on that basis I would not have awarded a large amount on the basis of permanent injury. I came to that conclusion from all of the evidence in the case, from the evidence of experts and all the other evidence, and I want to say this, too, that that doesn't imply in any way that the plaintiff is malingering or making a false claim here. It is true that in large part his claims of injury are based upon subjective symptoms which only he could positively know about, and the corroborative evidence of the wife and friends who hear him complain is, after all, pretty largely a matter of taking his word for it, and of course there should be corroboration of claims of a plaintiff because a plaintiff has very much interest in the outcome of a case of this kind and even the ones who are very honest about it can be influenced subconsciously. It is an amazing thing, and I find more and more I am impressed by it with my years of experience on the bench, what self-interest can do to feelings and to their testimony. People feel what it is to their interest to feel, very largely, and everybody probably has had the experience of having a terrific tooth ache that subsides completely when you get in the dentist's office and face the possibility of having it extracted, and it is amazing what people's feelings can do. And I think it doesn't mean that these people are malingering, the fact that I think in a very large percentage of these cases you will find that there is a marked recovery after trial; whether the plaintiff loses or wins, there is a marked improvement in condition usually after trial; and that is due to the change in the climate that influences the subconscious mind. Well, so much for that.

"You may prepare findings and order. I suppose we should have findings on this, I am not sure. Well, you can look at the rule." * *

On December 31, 1956, 17 days after the oral decision, findings of fact were signed and filed which read as follows:

"Findings of Fact and Conclusions of Law After Trial Before The Court Without A Jury

"Findings of Fact

"I.

"That the jurisdiction of this Court is based upon Title 45, Chapter 2, Sections 51 et seq. of the United States Code, commonly known as the Federal Employers' Liability Act.

"II.

"That the defendant is, and at all times mentioned herein has been, a corporation duly organized and existing under the laws of the State of Minnesota, and owns and operates a railway company engaged in interstate commerce in the State of

Washington and other states of the United States, and defendant has certain yards known as the Hillyard Yards at Spokane, Washington, over which it switches and moves cars.

## "III.

"That at all times mentioned herein, and at the time plaintiff avers that he suffered injuries, as hereinafter more fully alleged, he was employed by the defendant Great Northern Railway Company; that he was engaged in interstate commerce and interstate transportation and the duties of the plaintiff's employment were either in whole or in part in furtherance of interstate commerce and interstate transportation and they directly or closely and substantially affected such interstate commerce.

## "IV.

"That at all times herein mentioned, defendant owned, used and was under the duty to maintain as a part of its line and system of railroad in Spokane, Washington, its railroad yards and track facilities, commonly known as the Hillyard Yards.

## "V.

"That on June 8, 1955, at or about 8:20 P.M., plaintiff was in the employ of the defendant as a brakeman at its Hillyard Yards and engaged in the performance of his duties preparatory to leaving said yard and was inspecting a train on which he was about to depart therewith. That while walking between train yard tracks 12 and 13, at a point about 20 cars east of the Francis Street bridge, he tripped upon a coil of wire and fell to the ground. That as a result of said falling he presented evidence pertaining to injuries alleged to have been sustained, which evidence was disputed by other evidence presented by the defendant.

## "VI.

"That no evidence was presented as to where the coil of wire over which plaintiff testified he fell had come from or how long it had been there. Undisputed evidence was presented that said Hillyard Yards and the area lying between train yard tracks 12 and 13 at the location where plaintiff fell, was inspected and cleaned on June 8, 1955, the day of said accident; and had been inspected and cleaned on June 7th and June 6th, immediately prior thereto. The undisputed evidence further shows that no wire was used by the car repairmen in making light repairs upon railroad cars when located on train yard tracks 12 and 13 and, in particular, in the area in which the plaintiff fell. There was a complete absence of any evidence that wire of any kind had ever been placed, left or even seen at any time in the area in which the plaintiff fell or at any points between train yard tracks 12 and 13.

## "VII.

"The undisputed evidence was that the area between train yard tracks 12 and 13, including the area where the plaintiff fell, were clean and free of debris on the afternoon of June 8, 1955 after they had been inspected and cleaned that day.

## "VIII.

"There was no evidence that the defendant: (a) negligently failed and neglected to properly and frequently inspect the Hillyard Yards and keep the same in a neat condition, (b) that the defendant negligently failed and neglected to keep the area or footpath between train yard tracks 12 and 13 clear of wire and other debris, which area or footpath plaintiff was required to use in the performance of his duties, (c) that the defendant carelessly and negligently placed, left or allowed to remain, the coil of wire heretofore referred to in the area or footpath which plaintiff used while inspecting the train upon which he was working, (d) that

the defendant negligently failed and neglected to warn or advise the plaintiff of the existence of said coil of wire prior to the time that the plaintiff was required to work in said area or footpath.

"From The Above Findings of Fact, The Court Makes The Following Conclusions of Law

"I.

"Defendant was not negligent in the maintenance of its Hillyard Yards and, in particular, the area in which the plaintiff fell on June 8, 1955.

"II.

"That the defendant did not negligently fail to provide the plaintiff with a reasonably safe place in which to work on June 8, 1955 at the time that he fell.

"III.

"That the evidence was insufficient to impute either actual or constructive notice to the defendant of the existence of said wire, so as to render it negligent merely by reason of its being there when plaintiff tripped over it.

"IV.

"That the doctrine of *res ipso loquitor* (sic) is not applicable under the evidence presented in this case.

"V.

"That any injuries or damages which the plaintiff may have sustained as a result of said fall were not proximately caused by the negligence of the defendant in failing to exercise reasonable care in the inspection and maintenance of its yards where the plaintiff was required to work on in providing him with a reasonably safe place in which to work.

"VI.

"Plaintiff is not entitled to recover and judgment should be entered against him, in favor of the defendant, dismissing said action."

As we examine the evidence, we find at the close of the evidence that the defense, as a minimum, had created a doubt as to whether the wire causing the injury was the regular wire used by the railroad in its repair work. It had created by evidence a doubt as to whether, by reason of inspections, there was a probability that the offending wire had been along the tracks for an adequate time to charge the defendant with notice of its presence.

First, we should say that full findings supplant a "decision," especially an oral decision. The judge's conversation then sinks into the limbo.

Returning to the evidence, we are satisfied that the record is such that no trier of fact could be compelled to find for the plaintiff. And, there is a strong argument, that this is a case where the trial court would have to decide that there was not enough evidence to submit to a jury. We do not reach that point.

Some comment on res ipsa loquitur is apposite.[1] It may be observed, we believe, that its manifestations are sometimes tricky, and even costly. Also, it is hard to think of a case where it is desirable to refer to "res ipsa loquitur" by name in the findings or conclusions. The findings and conclusions are the ultimate determinations and do not prop-

---

[1] Through the years, the vitality of Mr. Justice Pitney's succinct statement in Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815, has stood. He said:

"In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur*, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury [in Tittman's case, the court] is, whether the preponderance is with the plaintiff."

erly concern the minute details of how the court arrived at its destination. The findings and conclusions here apparently were prepared by the defendant at the court's direction. Upon entry, they are the court's just as much as if the court had been the author.

■ Generally, we are confident, irrespective of the twists and turns of res ipsa loquitur from one jurisdiction to another, that when the defendant has some evidence suggesting reasonably possible causes [2] for which the defendant would not be responsible, then no fact trier is compelled by the doctrine of res ipsa loquitur to find for the plaintiff. Also, stating it conversely, we deem it to be an ever present consideration that he who tries facts should have some sort of an abiding belief that some cause, some negligence, known or unknown, of the defendant explains the mystery before he finds for the plaintiff.[3]

■ We are firmly convinced that when the trial judge adopted in his conclusions of law the statement, "That the doctrine of res ipsa loquitur is not applicable under the evidence presented in this case," he meant to say, "I find 'res ipsa loquitur' of no use here. It would not explain the occurrence to me and I would reject it." One may note his satisfaction with the evidence of the defendant (findings of fact numbered VII and VIII) that the yard had been inspected and cleaned on the afternoon of June 8, 1955. We reject a construction that in the findings and conclusions the trial judge has said, "The doctrine of res ipsa loquitur could not possibly have had any application here."

Obviously, were we to conclude that we should send this case back and say, "Toy with res ipsa loquitur a little," the trial court would be of the same opinion still on the issue of fault. In sum, in saying res ipsa loquitur has no application here, the trial judge, we think, has also said, "It doesn't help me." Res ipsa loquitur is not a doctrine of tight thought control.

Plaintiff-appellant buttresses his argument by pointing out that the defendant at the close of all the evidence made a motion to dismiss. And the final judgment does say "judgment of dismissal is entered." The projection is that the court held there was not a prima facie case made out by the plaintiff. The court's oral decision, supplanted by the findings of fact and conclusions of law, does have some discussion in it pointing to mental processes at the moment appropriate to the consideration of a motion for a directed verdict. However, when the court was done we see the end decision was the same as if at the end of the trial the defendant had "moved for judgment" or had not moved at all, just letting the case be submitted for decision. Surely it was understood the case was submitted for all purposes.

While the findings do say there was no evidence of "this and that," nonetheless, if one finds there should be a directed verdict in a jury case, there is no reason for findings. Also, findings in their very nature imply some dispute as to facts.

■ While the findings are clearly too long, we are not disposed to say they are clearly erroneous in the sense of requiring reconsideration. The trial judge thought the evidence that no wire had been used for car repair by defendant's

---

2. There was evidence that the yards were also used by the Spokane, Portland and Seattle Railroad, although Great Northern use predominated. There was a possibility that the wire could have fallen off of a train either sometime or shortly before Tittman's injury. Which train or whose train would be uncertain. The possibility existed of Spokane, Portland and Seattle employees dropping it on the ground shortly before the accident.

3. In the historic res ipsa loquitur case of Bryne v. Boadle, 2 H. & C. 722, 159 Eng. Repr. 299, (barrel of flour rolling out the window) from which plaintiff makes a projection here, the fact of exclusive control was never shaken. But, suppose there the trial judge had been seized with doubts upon the basis of all the evidence about control, or how the barrel (and at whose hands) the barrel got to the point from which it started its flight toward plaintiff?

employees in the area involved in the accident was satisfactory. Accepting that evidence, he declined to speculate on the other possibilities. This, we hold, was in his province.

We do not regard our decision as in conflict in the slightest with Wilson v. United States, 9 Cir., 250 F.2d 312, and the cases there cited. There our Court was of the opinion that a conscious failure to pay one's social security tax was not enough to uphold a conviction under Section 2707(c) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 2707(c), and that the willfulness described in Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418, (income tax) was required. In Forster v. United States, 9 Cir., 237 F.2d 617, we called this "willful willfulness." In Wilson the trial court was under the basic misconception (later determined by our court to be such) that a knowing failure to pay the taxes was enough to support a felony conviction. When one is done with Wilson one has the feeling that the trial court's basic misconception of the law may have (and probably did) affect its determination that the defendant in that non-jury case was guilty.

In the findings and conclusions in Tittman's case we do not find any clear evidence that a wrong standard was actually applied and we do not believe that any reconsideration here, short of ordering the court to find for the plaintiff, would bring any different result.

Judgment affirmed.

POPE, Circuit Judge (dissenting).

The reason I dissent is that I feel I must accept what the trial judge actually said about res ipsa loquitur, and must assume that he meant what he said. That is in Conclusion IV as follows: "That the doctrine of *res ipsa loquitur* is not applicable under the evidence presented in this case." I perceive no difference between myself and the majority in the view that such statement is incorrect; it is not the law under the facts of this case. The consequence here should be the same as that applied by this court in Wilson v. United States, 250 F.2d 312, where we held that where the trier of facts has applied improper standards of law to the facts of the case, there must be reversal. As there indicated this court had previously said the same thing in Mar Gong v. Brownell, 9 Cir., 209 F.2d 448, and in Takehara v. Dulles, 9 Cir., 205 F.2d 560.

No one supposes that the trial judge here was obliged to find for the plaintiff or to draw any inference of negligence because of the rule of res ipsa loquitur. That is not the point. In saying "the doctrine or res ipsa loquitur is not applicable" the court has said, as plainly as language can say it, that upon this record it was *obliged* to find for the defendant. What the trial judge has said is: "I *cannot* infer negligence here." Plainly enough if this is a proper case for application of the doctrine of res ipsa loquitur, then the trial court was proceeding upon a misconception of what it could decide; and for the reasons stated in Wilson v. United States, supra, such an application of improper standards of law to the facts by the trier of facts, compels reversal.

What exposes a reversible error here is the manner in which the findings are framed. The majority opinion succinctly describes these findings in saying: " * * * the findings do say there was no evidence of 'this and that'." In essence the findings say: No evidence was presented as to where the coil of wire had come from or that any such wire had been placed or seen in the yards, or that there was a failure to inspect, or to keep the area clear of wire, or that defendant negligently left it there, etc. In other words, the findings are limited to a statement that there was no evidence of any of these specific acts of negligence. But as stated in Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815, the meaning of res ipsa loquitur, where it applies, in respect to proof of negligence, is that though "direct evidence of it may be lacking," yet the facts of the occurrence "furnish circumstantial evidence of negligence." If the court was wrong in

its statement that the doctrine of res ipsa loquitur is not applicable here, then the court was erroneously saying: "there is no circumstantial evidence of negligence upon which a finding for plaintiff could be based."

Suppose an eye-witness should testify that he observed a specific act of negligence but the court should erroneously hold that the witness was disqualified from testifying and strike his testimony from the record and then found for defendant for want of evidence. In my view there is no difference in the two cases. In the case of the eye-witness the judge would not be obliged to believe the testimony and in the present case the judge was not obliged to draw the inference of negligence from the circumstances of the case. But there is just as much reason for reversal in this case as in the supposititious one, for the trier of facts has proceeded under a misapprehension as to what decision is open to him.

Now, if we were to come to the question which I think we cannot properly avoid, namely, whether this was a proper case for the application of the doctrine of res ipsa loquitur, we must note that that presents a federal question. Jesionowski v. Boston & M. R. Co., 329 U.S. 452, 457, 67 S.Ct. 401, 91 L.Ed. 416. As indicated in that case and in Johnson v. United States, 333 U.S. 46, 49, 68 S.Ct. 391, 92 L.Ed. 468, the Supreme Court has rejected interpretations of the doctrine which unduly narrow it. In Bedal v. Hallack & Howard Lumber Co., 9 Cir., 226 F.2d 526, 538 (footnote 18), we took occasion to note that the Supreme Court "has given the rule what may be an exceptionally broad and liberal application." The same conclusion is drawn by Prof. McCormick, McCormick on Evidence, 1954, p. 644, (footnote reference to these two cases).

It seems to me that if we were to apply the rules of Jesionowski and Johnson to this case we would say that in the ordinary course of things such a wire as caused this accident to Tittman would not have been where it was if the defendant used proper care to inspect the tracks and yards as a part of its duty to maintain them. That it had such duty, and that it had possession of the yards as a part of its line and system the court has found in Finding IV quoted in the opinion. The employer defendant owed the duty to use care to provide plaintiff a reasonably safe place to work. That involved the duty of inspecting its premises. It is true that witnesses for the defendant testified that there was inspection of the premises and that nothing amiss was discovered, but the court was not obliged to accept that testimony as conclusive.[1] As stated by Judge McAllister in his dissenting opinion in Baltimore & O. R. Co. v. O'Neill, 6 Cir., 211 F.2d 190, 197: "It is not enough that the evidence of the defendant would, if true, be sufficient to rebut the presumption, because it is for the jury to pass upon the credibility of the witnesses and the truth of the testimony." That dissenting opinion is peculiarly significant since Judge McAllister there expressed the view that where a new bolt, never previously used, which the employee took from the railroad's tool room, broke and caused injuries to the employee, the rule of res ipsa loquitur warranted a finding of negligence on the part of the employer railroad. The contrary view of the majority of the court was summarily reversed in O'Neill v. Baltimore & Ohio Railroad Co., 348 U.S. 956, 75 S.Ct. 447, 99 L.Ed. 747, which suggests that the Court approved Judge McAllister's views.

In Webb v. Illinois Central Railroad Co., 7 Cir., 228 F.2d 257, the plaintiff, a

---

1. The court noted that this testimony was "undisputed." By this it must have meant that there was no direct evidence to the contrary. Once it appears that the rule of res ipsa loquitur may be applied here, and that the facts therefore permit an inference of negligence (including a failure to inspect), the trial court is confronted with the question whether the inspector really inspected as he says he did, or whether he just said so.

brakeman, working along a switch yard between the tracks fell when he tripped on a clinker about the size of his fist. The court held that there was no submissible case made and that the fault or negligence could not be inferred from the mere existence of the clinker and the happening of the accident. Certiorari was granted and the decision of the court of appeals reversed in Webb v. Illinois Central R. Co., 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503. As the decision there shows, there was a substantially greater amount of evidence as to the origin of the clinker than there is as to the source of the wire in the case now before us; but what seems to me to be peculiarly significant is the statement made by the court, 352 U.S. on page 513, 77 S.Ct. on page 453 of the opinion as follows: "The Court of Appeals viewed the evidence as insufficient to raise a jury question because the petitioner did not adduce proofs showing what standard procedures were followed to prevent large clinkers from being used in road ballast and in inspecting roadbeds for hazards to firm footing. *We do not think that the petitioner's evidence was lacking in such proofs even if we assume, and we question, that he had that burden.*" (Emphasis mine.) It seems to me important that the Supreme Court stated that it questioned that Webb had any burden to adduce proofs showing what standard procedures were followed in inspecting the roadbeds for hazards to firm footing.

To my mind this sounds very much like a statement of the Court that the proof of the presence of the clinker and of the plaintiff's fall thereon, satisfied plaintiff's burden of going forward with the evidence. Perhaps it is dictum, but it comes from a high source.

What gives me the greatest assurance that I am right is the extraordinary length to which the majority have gone in correcting this defective conclusion. They amend the statement, which they do not purport to defend as written, by saying of the trial judge "he meant to say", and then putting the matter as they would amend the conclusion. As I un-derstand the opinion, it suggests that the judge could not possibly have meant what he said about the doctrine of res ipsa loquitur, so they add embellishments such as "It doesn't help me", "I find 'res ipsa loquitur' of no use here", and so forth. I would not doubt at all that the findings were drawn by prevailing counsel and then presented to and signed by the judge. But I do not know any such thing and I must take it that the language used in the findings was that of the judge. Similarly it is my view, in contrast with that of my associates, that I must assume that the judge meant what he said, and that if the findings are defective, the case must be returned for him to correct them. Correcting them is not our function.

I think the case should be remanded with instructions to make further findings. I realize of course that on such a remand the court could properly find against the plaintiff. In my view that is beside the point, for the teaching of Wilson v. United States, supra, is that a litigant is entitled to have the facts found by a trier of the facts who is not applying improper standards of law.