[No. 28399.   Department One.   May 18, 1942.]

HERBERT SMITH *et al., Appellants,* v. MANNING'S, INC., *Respondent.*[1]

[1]Reported in 126 P. (2d) 44.

574

Oscar A. Zabel, for appellants.

Whittemore & Truscott, for respondent.

DRIVER, J.—Plaintiffs, husband and wife, brought this action for personal injuries suffered by the wife as the result of a fall in the cafeteria section of a store operated by the defendant at 216 Union street in Seattle. A trial by jury resulted in a verdict for the defendant. Plaintiffs' motion for a new trial was denied, and they have appealed from the judgment of dismissal entered on the verdict. For convenience, Mrs. Smith, the injured wife, will hereinafter be referred to as if she were the only appellant.

About 11:20 in the forenoon of July 26, 1938, appellant, accompanied by her daughter, entered respondent's store and ordered a hamburger sandwich and some coffee at the cafeteria counter. She then sat down at a table in one of the booths at the rear of the room. There was a row of these booths on either side of a narrow aisle four or four and a half feet wide and about forty feet long. The floor of the aisle was covered with linoleum, and it was well lighted by over-

head electric lights. When the food which appellant ordered had been prepared, one of respondent's bus boys brought it down the aisle and put it on her table. Shortly thereafter, upon discovering that she had no teaspoon, she started up the aisle towards the counter to get one when suddenly her foot slipped and skidded, and she fell to the floor. Two bus boys, seeing her plight, came to her assistance and picked her up. She testified that crumbs had adhered to her coat while she was on the floor; that, as she sat there, with one foot doubled up underneath her, she could see a slice of pickle attached to the heel of her shoe; that the floor of the aisle was littered with matches and cigarette butts, "It was littery and dirty"; and that one of the bus boys got a little broom and dustpan and wiped up the place where she had fallen—"scooped around and swiped it up."

Appellant testified also that she had been a patron of respondent's cafeteria a number of times prior to her accident, and that, customarily, the bus boys, in cleaning off the tables, had wiped the crumbs and "the slop and stuff on the floor." She was corroborated in this by the testimony of her daughter.

It had been a common custom for patrons to bring their own lunches and then supplement them with coffee and other articles of food purchased at the cafeteria. Respondent had permitted this because it tended to stimulate grocery sales of its coffee. The bus boys on duty at the time of the accident testified that it was their practice, in accordance with their instructions, to take up immediately any potentially dangerous refuse dropped on the floor by the patrons; that, in clearing off a table, they sometimes dropped things, but immediately picked them up; and that the floor was swept twice a day, at eleven o'clock in the morning, just before the lunch hour rush, and again at two

o'clock, after the rush. However, none of the bus boys or the manager, called as witnesses for the respondent, could say that the floor had been swept on the forenoon of the accident.

The bus boy on duty in the aisle when appellant fell testified that he was "possibly ten, fifteen or twenty feet away," and that, "When I saw her she was on the floor, and I went over to see if I could be of assistance. I saw what she slipped on, a pickle, she had slipped,—and I picked it up and put it in the garbage can and I saw the skid mark." As the result of her fall, appellant suffered a fractured ankle bone.

Appellant assigns as error the trial court's refusal to give one of her requested instructions and the giving by the court of its instruction No. 9. Timely and sufficient exceptions were taken as to both of them. The proposed instruction in question is as follows:

"You are instructed that a patron of a restaurant or other place of business has a right to assume that the floors and aisleways are in a reasonably safe condition to walk upon. It is the duty of the proprietor, owner, or operator of such a place of business to keep the said floors and aisleways for use of its patrons and invitees in a reasonably safe condition for such use, and any injury and damage proximately resulting because of a neglect of this duty is actionable."

The second sentence of the instruction, with reference to the duty of care of a storekeeper to maintain his place of business in a reasonably safe condition for his patrons, was, in substance, covered by the instructions which the court gave. Appellant contends, however, that it was error to reject the first sentence of the proposed instruction.

A patron of a restaurant or store does not have an absolute, unqualified right under all circumstances to assume that "the floors and aisleways are in a reasonably safe condition to walk upon." He must look out

for his own safety and, in so doing, is required to use that degree of care which a reasonably prudent person of ordinary intelligence would exercise under like or similar circumstances. *Watson v. Zimmerman,* 175 Wash. 410, 27 P. (2d) 707; *Tyler v. Woolworth Co.,* 181 Wash. 125, 41 P. (2d) 1093. If there are obvious pitfalls or dangers in the way, it is the patron's duty to take measures to avoid them.

In the instant case, according to appellant's own testimony, the floor of the aisle was littered and dirty. She had the right to assume that it was in a reasonably safe condition for travel only until she knew, or, in the exercise of reasonable care, should have known, the contrary. Whether or not she should have known, or was negligent in failing to see, the dangerous condition of the floor, under the circumstances, we think, clearly was a question of fact for the jury. The trial court did not err in refusing the proffered instruction in the absence of some such qualification as we have indicated.

Passing to appellant's second assignment of error, the trial court's instruction No. 9, to which it pertains, reads as follows:

"You are instructed that the law requires a person to use her faculties so as to avoid danger, if she can reasonably do so, and a failure in that regard, if it materially contributed to the injury complained of, will prevent a recovery by the person claiming injuries. *A person will be deemed to have actually seen what could have been seen, if she had looked.*

"If you believe by a preponderance of the evidence that the cause of the injury was the failure of Mrs. Smith to use her faculties, *when if she had looked,* or used ordinary care for her own safety, *she would not have fallen,* then she is guilty of contributory negligence, and your verdict should be for the defendant." (Italics ours.)

So far as the record shows, appellant was in full possession of her faculties. She testified that she did not look at the floor just before she fell. The aisle was well lighted, and it must be assumed that, if she had looked directly at the spot where her foot slipped before she stepped there, she would have seen the piece of pickle that caused her to fall. By the italicized sentence of the first paragraph of the instruction, therefore, the court, in effect, told the jury that appellant must be deemed to have actually seen the piece of pickle on the floor.

In the second paragraph, the jury was instructed that, if the cause of appellant's injury was her failure to use her faculties, "when if she had looked . . . she would not have fallen," she was guilty of contributory negligence. The principle that one will be deemed to have actually seen what could have been seen had he looked is applicable where there is a positive duty to look, as in the case of a disfavored driver entering a street intersection, or where one is about to traverse a place of known danger, or the danger is so clearly apparent that it could not escape the attention of a reasonably prudent person. The principle is not germane in the instant case, because it was not appellant's duty to keep her eyes constantly riveted to the floor as she walked along the aisle provided for her use, nor can it be said that the danger was so obvious that, in the exercise of due care, she must have seen it. She testified that she first noticed the litter on the floor after she had fallen. The condition was not so conspicuous as necessarily to challenge her attention prior to that time, and it was not incumbent upon her to watch her footing every step of the way. *Wiard v. Market Operating Corp.*, 178 Wash. 265, 34 P. (2d) 875; *Wood v. Washington Nav. Co.*, 1 Wn. (2d) 324, 95 P. (2d) 1019;

*Griffin v. Cascade Theatres Corp.,* 10 Wn. (2d) 574, 117 P. (2d) 651.

The objectionable portions of instruction No. 9 seem to have been taken largely from *Johnson v. Washington Route,* 121 Wash. 608, 209 Pac. 1100. It was said there that the law requires a person to use his faculties so as to avoid danger, if he can reasonably do so, and that "a person will be deemed to have actually seen what he could have seen if he had looked." That case will serve as a good example of a situation in which the quoted principle is applicable. The plaintiff, in an action for personal injuries, had been a passenger on defendant's passenger steamer. When it docked at Bremerton, a gangplank was placed so as to extend from the boat to the wharf. The outer end of the plank was about twenty-four inches above the floor of the dock. Although it was a clear day, and there was nothing to obstruct her vision or distract her attention, the plaintiff walked off the end of the gangway and fell to the dock. She testified that she thought there was a step at the end of the plank, but, in the words of the opinion, "She did not look to see if there were such a step, but walked off the gangplank without using her faculties. . . . " This court concluded that the plaintiff had been guilty of contributory negligence as a matter of law and affirmed the lower court's judgment of dismissal entered after the granting of defendant's motion for nonsuit.

Manifestly, we have an entirely different factual situation here. Strictly followed and logically applied to the evidence in the instant case, instruction No. 9 would virtually impel a finding by the jury that the plaintiff had been guilty of contributory negligence. We think that the instruction was both erroneous and prejudicial.

Respondent contends, however, that, in any event, a new trial should not be granted for the reason that, as a matter of law, appellant is not entitled to recover. The contention is based principally upon the well-established rule that, where the negligence of a storekeeper or restaurateur is predicated upon his failure to keep his premises in a reasonably safe condition, it must be shown that the condition has either been brought to his notice or has existed for such time as would have afforded him sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger. *Wiard v. Market Operating Corp., supra; Riley v. Pacific Outfitting Co.,* 185 Wash. 497, 55 P. (2d) 1058; *Kennett v. Federici,* 200 Wash. 156, 93 P. (2d) 333.

At the time of appellant's accident, an employee of respondent was in the aisle where she fell, charged with the duty of keeping the floor clear of refuse. From the condition which appellant described, the debris must have been accumulating on the floor for a considerable time. As stated, none of respondent's employees could say that the floor had been swept that morning. The bus boy stationed in the aisle, charged with the duty of keeping it clean, the jury could have found, knew of the hazardous condition, or, at least, should have known, in ample time to remove the danger. The debris on the floor could hardly have escaped his notice, according to appellant's testimony, although, as we have pointed out, it was not so apparent as necessarily to attract her attention.

The contention of the respondent now under consideration, in effect questions the sufficiency of the appellant's evidence. Viewed in the light most favorable to the appellant, as the well-established rule requires, the

evidence was sufficient to take the case to the jury on the question of respondent's negligence.

The judgment is reversed, and the cause remanded with direction to grant appellant's motion for a new trial.

ROBINSON, C. J., MAIN, STEINERT, and BLAKE, JJ., concur.