[No. 39142.   Department One.   November 9, 1967.]

DELORES BRANT et al., *Appellants*, v. MARKET BASKET
STORES, INC., *Respondent*.*

*Reaugh, Hart, Allison & Prescott*, by *Robert B. Allison*
and *Keith R. Baldwin*, for appellants.

*Merrick, Douglas & Burgess* (*F. Ross Burgess*, of coun-
sel), for respondent.

HILL, J.—The trial court dismissed this slip-and-fall ac-

*Reported in 433 P.2d 863.

tion at the conclusion of the plaintiff's[1] case, taking the position that there was no proof of negligence and, further, that if there was a dangerous condition existing at the place where the plaintiff slipped and fell, there was no showing that the defendant (Market Basket Stores, Incorporated) or its employees knew or should have known of its existence.

We recognize that our consideration of such an appeal is governed by the rule recently restated in *Merrick v. Sears, Roebuck & Co.*, 67 Wn.2d 426, 428, 407 P.2d 960 (1965):

A motion for dismissal admits the truth of plaintiffs' evidence and all inferences favorable to them arising therefrom, and in ruling upon the motion, if the evidence allows more than one reasonable interpretation, the court must interpret the evidence most strongly against the moving party and most favorably to the opposing party. The court cannot grant the motion unless there appears to be no substantial evidence to support the claim.

With this rule in mind we turn our attention to the evidence before the court when the motion to dismiss was granted.

The plaintiff's slip and fall occurred in the early afternoon in one of the defendant's stores within 8 to 12 feet of an entrance. It had been snowing intermittently most of the morning, with the snow melting as it fell. It could be inferred that the customers entering the store brought in on their clothes and footgear water that ultimately found its way onto the floor. It was testified that near where the plaintiff slipped and fell there was "tracked-in" water on the floor.

After the fall, the plaintiff remained sitting on the floor for 5 minutes, and perhaps longer. Her brother, who helped place her on a stretcher to carry her to the ambulance, testified that her clothing was "damp." Her husband, who

---

[1]The plaintiffs (and appellants here) are Delores Brant and her husband, Willard R. Brant. It was Delores Brant who slipped and fell, and it was her injuries for which recovery was sought. We shall refer to her as though she were the sole plaintiff and appellant.

also helped place her on the stretcher, testified that her coat was "soaking wet." (Her testimony negated the possibility that the coat could have been wet when she entered the store.)

There was testimony concerning there being debris (which was never more definitively described than "candy wrappers") on the floor near where the plaintiff slipped and fell. There was no testimony that she slipped on a candy wrapper or on anything other than a wet floor. There was no testimony as to the character of the floor, *i.e.*, as to whether it was wood, concrete, asphalt, tile or some other material. There was no testimony that water would render such a floor, as then and there existed, slippery or dangerous.

We said in the *Merrick* case, *supra*, that

> Negligence cannot be inferred from the fall alone, nor from mere dampness or wetness where it is to be expected in some degree . . . . (p. 429)

Concededly, there was evidence in this case of more water on the store floor than there was on the restroom floor in *Merrick, supra,* but no evidence, other than the fact that the plaintiff slipped and fell, to establish that a dangerous condition existed, or that the defendant had any reason to know that a dangerous condition existed.

It is well established in the decisional law of this state that something more than a slip and a fall is required to establish either the existence of a dangerous condition, or the knowledge that a dangerous condition exists on the part of the owner or the person in control of the floor. *Hooser v. Loyal Order of Moose, Inc.,* 69 Wn.2d 1, 416 P.2d 462 (1966); *Hanson v. Lincoln First Fed. Sav. & Loan Ass'n,* 45 Wn.2d 577, 277 P.2d 344 (1954). See *Pement v. F. W. Woolworth Co.,* 53 Wn.2d 768, 337 P.2d 30 (1959), and cases cited.

Nor does the presence of water on the floor of a store establish negligence. While we have had many cases resulting from slips and falls on premises where it was the duty of the owner or proprietor to exercise reasonable care to

maintain in a safe condition such portions of his premises as he invites the public to use for the purposes of the owner's or proprietor's business therein, there has, in almost every case, been some foreign substance other than water on the floor.[2]

We seem to have had but two "water on the floor" cases. The first was *Shumaker v. Charada Inv. Co.*, 183 Wash. 521, 49 P.2d 44 (1935), in which we reversed a judgment for the plaintiff and directed a dismissal. In that case, the plaintiff slipped and fell while walking along an aisle in a public market. There, water was sprinkled on fresh vegetables being displayed and was, at times, thrown onto the floor. We there decisively disposed of any contention that a wet cement floor, per se, constitutes a dangerous condition, saying:

> We are of the opinion that no primary negligence was, in this case, proven against appellant. Assuming that appellant knew that water was frequently splashed upon the cement floors of the market, and that these floors were often damp or even wet, it cannot be held that a wet cement floor constitutes such a dangerous condition

---

[2]While not claiming to have made a comprehensive search of the cases, we here cite eleven, all from the Washington 2d Series, as indicative of the foreign substances claimed to have caused "slips and falls."

*Hooser v. Loyal Order of Moose, Inc.*, 69 Wn.2d 1, 416 P.2d 462 (1966); wax carried from dance floor had accumulated in adjacent passageway. *Messina v. Rhodes Co.*, 67 Wn.2d 19, 406 P.2d 312 (1965); sand, mud and water. *Miller v. Payless Drug Stores of Washington, Inc.*, 61 Wn.2d 651, 379 P.2d 932 (1963); greasy wax-like substance on store floor. *Presnell v. Safeway Stores, Inc.*, 60 Wn.2d 671, 374 P.2d 939 (1962); banana peeling on store floor. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 372 P.2d 193 (1962); piece of paper on stairway. *Pement v. F. W. Woolworth Co.*, 53 Wn.2d 768, 337 P.2d 30 (1959); claimed negligent application of floor preparation to store floor. *Hendrickson v. Brill*, 45 Wn.2d 766, 278 P.2d 315 (1954); some liquid or sticky substance on dance floor. *Mathis v. H. S. Kress Co.*, 38 Wn.2d 845, 232 P.2d 921 (1951); a certain liquid on store floor. *Kalinowski v. YWCA*, 17 Wn.2d 380, 135 P.2d 852 (1943); a preparation used on dance floor, *i.e.*, corn meal mixed with "Misto." *Smith v. Manning's, Inc.*, 13 Wn.2d 573, 126 P.2d 44 (1942); food on floor in cafeteria. *Wood v. Washington Navigation Co.*, 1 Wn.2d 324, 95 P.2d 1019 (1939); ice on deck of ferry boat.

as to hold the owner maintaining the same responsible as for negligence to one who slips thereon. A wet cement surface does not create a condition dangerous to pedestrians. It is a most common condition, and one readily noticed by the most casual glance. (p. 530)[3]

The second "water on the floor" case was *Merrick v. Sears, Roebuck & Co., supra,* where we affirmed a judgment of dismissal. The fall, in that case, had occurred in the store restroom on a ceramic tile floor. We pointed out that there was no evidence in the record of any soapy scum, and the only evidence was that the floor was wet. We pointed out that negligence could not be inferred from the fall alone, nor from mere dampness or wetness where it is to be expected, saying:

Mrs. Merrick said that she felt the floor with her hand and it was wet, but she wholly failed to elaborate upon this, and one could not infer therefrom that the floor had (1) an inordinate amount of water in such a quantity as to render it dangerously slippery, or (2) that the wetness persisted to a dangerous degree for a sufficient time to charge the store with notice of the wet and slippery condition. (p. 428)

A case relied on by the plaintiff is *Messina v. Rhodes Co.,* 67 Wn.2d 19, 406 P.2d 312 (1965). The trial court had sustained a challenge to the sufficiency of the evidence at the close of the plaintiffs' case. The negligence charged was permitting the floors to be covered with an unusual amount of dirt, sand, and water thereby making the surface of the floor highly slippery. We granted a new trial, but specifically distinguished the situation in that case from the *Shumaker* case, *supra,* by making clear that in *Messina* there was evidence of more than water on the floor, saying that the evidence must be such that,

---

[3]This was a five to four decision; but the dissent, as we point out in *Messina v. Rhodes Co., supra* (discussed in the opinion), was limited to the proposition that the evidence went beyond "wetness," and since there was evidence of a pool of water, due to the uneven surface of the concrete floor, into which the plaintiff had stepped when she fell, the dissenters felt that there was some evidence of the existence of a dangerous condition.

> [A] jury could reasonably find that respondents were negligent in permitting the floor of the store to become covered with an unusual amount of a foreign substance, to wit, dirt, sand, and water which was brought in by other shoppers on a very rainy day. (p. 21)

Emphasis was placed on tracked-in mud, which left black marks on the floor. Employees testified that they were supposed to mop up "maybe every hour," because it got slippery; so that it was clear that the potential slippery condition was known to the store management.

In *Merrick, supra,* we followed *Shumaker* and distinguished *Messina,* saying that the sand, water and mud which created the dangerous condition in that case had existed for a sufficient time and under such conditions as to permit the jury to find actual and chargeable knowledge thereof in the store where the accident took place. We classify *Messina* with the foreign-substance cases in footnote 2, and not as a case involving only water on the floor. It was the sand and, particularly, the mud tracked in with the water that created what a jury might find to be a dangerous situation.

██  The defendant owed to its invitees in its place of business the duty of maintaining its store in a reasonably safe condition. What is a reasonably safe condition depends upon the nature of the business conducted and the circumstances surrounding the particular situation. *Messina v. Rhodes Co., supra; Shumaker v. Charada Inv. Co., supra.*

The plaintiff in this case has proven no more than that she slipped and fell on a wet floor and sustained certain injuries in consequence thereof. Our cases indicate that something more must be proved to establish that the defendant had permitted a situation dangerous to its invitees to exist.

If it could be assumed that tracked-in water on a floor, such as that maintained by the defendant, made it slippery and dangerous (and, as pointed out heretofore, there is a complete hiatus in the evidence as to the type of floor and the effect of water on it), there is no evidence that the

defendant or its employees knew or should have known that a dangerous condition existed. This is a prerequisite to a recovery by the plaintiff. *Pement v. F. W. Woolworth Co., supra; Hendrickson v. Brill,* 45 Wn.2d 766, 278 P.2d 315 (1954); *Mathis v. H. S. Kress Co.,* 38 Wn.2d 845, 232 P.2d 921 (1951).

There is another marked difference between this case and the situation in *Messina.* In that case, the store employees testified that they were required to "mop up" frequently because the floors became slippery.

We agree with the trial court that the plaintiff has failed to establish that the defendant permitted a dangerous condition to exist in its store, or that, if there was a dangerous condition, the defendant had, or should have had, knowledge of it in time to have remedied the situation before the plaintiff was injured, or to have warned her of the danger.

The judgment of dismissal is affirmed.

FINLEY, C. J., WEAVER and ROSELLINI, JJ., and OTT, J. Pro Tem., concur.