[No. 60968-3.    En Banc.    March 17, 1994.]
MARJORIE INGERSOLL, ET AL, *Appellants*, v. DEBARTOLO, INC., ET AL, *Respondents*.

*Sam J. Fogerty* (of *Briggs & Briggs*), for appellants.

*Joel E. Wright, Steven G. Wraith, Robin E. Aronson,* and *Lee, Smart, Cook, Martin & Patterson,* for respondent DeBartolo.

*Philip G. Hubbard, M. Shannon Underwood, Gregory S. Wright,* and *Hawkins, Jeppesen, Hoff, P.S.,* for respondent American Building Maintenance Company-West, Inc.

BRACHTENBACH, J. — Plaintiff wife, Marjorie Ingersoll (Plaintiff), slipped and fell while walking in the common area of The Tacoma Mall. The Mall is owned by defendant DeBartolo, Inc., d.b.a. The Tacoma Mall. Defendant American Building Maintenance Company-West, Inc. (ABM) had contracted to perform janitorial services for The Tacoma

Mall (Mall). Plaintiff and her husband, Maurice Ingersoll, who sued for loss of consortium, brought suit against the Defendants, alleging their failure to maintain a safe common area. The trial court granted summary judgment to both Defendants. We affirm.

Preliminarily, we note serious defects in appellant's record. There are five separate sets of clerk's papers. The pages therein are not numbered consecutively as required by RAP 9.6(b)(2). There is no general index to the clerk's papers as required by RAP 9.7(a). Both parties rely on excerpts from depositions which are not identified in the index to each separately bound set of clerk's papers, but are attached to trial briefs. Citations are to the pages of the depositions rather than to the numbered pages of the clerk's papers. Excerpts from a deposition of the Plaintiff are not identified, and it is only by the content of the deposition that the speaker can be identified. Incredibly, the excerpt pages of one deposition are completely out of sequence so that no logical reading of the content of the deposition is possible. These defects cause substantial difficulty in trying to fathom the record. Failure to comply with the basic Rules of Appellate Procedure is inexcusable.

Plaintiff was walking past a shoe store when she slipped and fell. Prior to the fall, she did not notice anything on the floor. When she stood up, she observed a smear on the floor. Although Plaintiff's brief asserts that the substance was melted ice cream, her testimony at deposition does not support that assertion. She could not identify the material except to say it was "something clear, maybe like an ice-cream cone or something". Clerk's Papers Per Request of Respondent to the Court of Appeals, at 3. Ultimately, she stated that she was not sure what the substance was. She saw no other debris on the floor.

While having lunch at a store in the Mall shortly after the incident, Plaintiff told the waitress about the fall and the waitress notified Mall security. The security officer found nothing on the floor at the place of the fall. The record does not show the time of his inspection. Neither

DeBartolo nor ABM has any record of a prior report of a spill or debris at that location.

■ ■ As to the law, we start with the basic and well-established principle that for a possessor of land to be liable to a business invitee for an unsafe condition of the land, the possessor must have actual or constructive notice of the unsafe condition. *Smith v. Manning's, Inc.*, 13 Wn.2d 573, 126 P.2d 44 (1942). Constructive notice arises where the condition "has existed for such time as would have afforded [the proprietor] sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger." *Smith*, at 580. The plaintiff must establish that the Defendant had, or should have had, knowledge of the dangerous condition in time to remedy the situation before the injury or to warn the plaintiff of the danger. *Brant v. Market Basket Stores, Inc.*, 72 Wn.2d 446, 451-52, 433 P.2d 863 (1967). Plaintiff presented no evidence that either Defendant had actual or constructive notice of any substance or debris on the floor.

However, there is an exception to the requirement of showing actual or constructive notice. This exception was first articulated in *Ciminski v. Finn Corp.*, 13 Wn. App. 815, 537 P.2d 850, 85 A.L.R.3d 991, *review denied*, 86 Wn.2d 1002 (1975). The plaintiff there slipped and fell in a liquidlike substance near the counter of a cafeteria-type restaurant. The Court of Appeals held that in such a self-service situation, where certain risks are inherent to the mode of operation, the plaintiff need not prove notice. The court stated:

> [A]n owner of a self-service establishment has actual notice that his mode of operation creates certain risks of harm to his customers. Since a self-service operation involves the reasonable probability that these risks will occur, these risks are foreseeable. Thus, it is not necessary to show actual or constructive notice of the specific hazard causing injury, and it becomes the task of the jury to determine whether the proprietor has taken all reasonable precautions necessary to protect his invitees from these foreseeable risks.

*Ciminski*, at 820-21.

This court adopted a similar rule, with one significant difference, in *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 666 P.2d 888 (1983) (involving a paint can falling from a store shelf onto the plaintiff's foot). The court there eliminated the need for constructive notice in certain instances by holding that "notice need not be shown . . . when the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable." *Pimentel*, at 49. The court noted the difference between its holding and the holding of the Court of Appeals in *Ciminski*:

> The *Ciminski* decision contains language which suggests that the requirement of showing notice is eliminated as a matter of law for all self-service establishments. 13 Wn. App. at 820-21. This is not the conclusion we reach under the analysis adopted here; the requirement of showing notice will be eliminated only if the particular self-service operation of the defendant is shown to be such that the existence of unsafe conditions is reasonably foreseeable.

*Pimentel*, at 49-50.

In a recent case, the Court of Appeals' determination of whether the *Pimentel* notice exception applied turned on the fact that the plaintiff's injury did not occur in the self-service area of the store. *Coleman v. Ernst Home Ctr., Inc.*, 70 Wn. App. 213, 853 P.2d 473 (1993). The court offered a definition of self-service area or department. "Self-service departments are areas of a store where customers service themselves. In such areas, where lots of goods are stocked and customers remove and replace items, 'hazards are apparent'." *Coleman*, at 218-19 (citing *Wiltse v. Albertson's, Inc.*, 116 Wn.2d 452, 461, 805 P.2d 793 (1991)).

We note that even if the injury does occur in the self-service department of a store, this alone does not compel application of the *Pimentel* rule. Self-service has become the norm throughout many stores. However, the *Pimentel* rule does not apply to the entire area of the store in which customers serve themselves. Rather, it applies if the unsafe condition causing the injury is "continuous or foreseeably inherent in the nature of the business or mode of operation."

*Wiltse v. Albertson's, Inc., supra* at 461. There must be a relation between the hazardous condition and the self-service mode of operation of the business. *See Wiltse.*

█ When Defendants moved for summary judgment it was their initial burden to show the absence of a genuine issue of material fact. *Young v. Key Pharmaceuticals, Inc.,* 112 Wn.2d 216, 770 P.2d 182 (1989). They met this burden by showing an absence of evidence to support Plaintiff's case, specifically a lack of evidence to prove actual or constructive notice. It then became Plaintiff's burden to show the existence of a genuine issue of material fact. *Young,* at 225.

Plaintiff attempts to meet that burden by bringing herself within the self-service exception holding of *Pimentel* by alleging that the Mall is a self-service operation. As stated above, "self-service" is not the key to the exception. Rather, the question is whether "the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable." *Pimentel,* at 49.

The record shows that Plaintiff has failed to produce any evidence from which the trier of fact could reasonably infer that the nature of the business and methods of operation of the Mall are such that unsafe conditions are reasonably foreseeable in the area in which she fell. The record discloses only that there is more than one food-drink vendor service in the Mall, that some such vendors do not provide seating and that some patrons carry the products to benches for consumption. Even this minimal line of proof is based on the unsupported assumption that the substance came from a food-drink vendor.

The record is silent as to obviously relevant facts relating to the nature of the Mall business and its method of operation. There is no proof of (1) the actual number of food-drink vendors, other types of vendors, or what products they sell; (2) the location of such vendors in relation to the location of the fall; (3) the methods of operation of the various vendors, particularly whether the products and their consumption resulted in debris or substances on the floor; (4) whether

patrons routinely brought products from outside the Mall into the Mall (alleged by Plaintiff, but completely unsupported factually); (5) the historical experience of slip and fall incidents prior to this event. In short, Plaintiff failed to present evidence that the nature of the Mall's business and its methods of operation are such that the existence of unsafe conditions is reasonably foreseeable. Without any evidence on which to make a determination that the *Pimentel* exception applies, Plaintiff had to show actual or constructive notice, a showing she did not even attempt to make.

■ Plaintiff and Defendants seem to assume that ABM owes Plaintiff the same duty as is owed by the owner or possessor of the premises. Under the Restatement (Second) of Torts § 328(E) (1965):

A possessor of land is

(a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

Under this definition, ABM is not the possessor of land. ABM is an independent contractor with limited duties. The contract is not in evidence, so the only relevant information is from the depositions of ABM's supervisor, who gave his interpretation of ABM's duties. Plaintiff did not address whether ABM owes a duty to her. If there is such a duty, its nature and scope are not discussed by Plaintiff. We express no opinion as to the resolution of these issues, but wish to note them so that it is clear that there are unresolved issues about ABM's potential liability.

Plaintiff does assert that ABM was negligent in providing only two employees to keep approximately 113,000 square feet of common area in the Mall free from dangerous hazards. First, as a side note, Plaintiff failed to establish accurately the amount of area being serviced by ABM. Plaintiff gets the square footage only from a witness who said his

estimate was just "a wild guess" and that he actually was "not really sure" of the square footage. Clerk's Papers Per Request of Appellant, at 13. Further, the record lacks any evidence to establish a standard of care applicable to ABM. Plaintiff fails to show that such staff did or did not maintain reasonably safe conditions. Given the lack of evidence on the standard of care, it is impossible to draw an inference on whether the staffing level was unreasonable. Plaintiff could have presented expert testimony as to the industry standard of care, but did not do so. Parenthetically, we note a fundamental question whether establishment of a standard of care presents a question of law or fact. Stephen A. Weiner, *The Civil Jury Trial and the Law-Fact Distinction*, 54 Cal. L. Rev. 1867, 1876-78 (1966).

To overcome the dearth of evidence, Plaintiff's attorney in the trial court puts forth in a memorandum what he *expects* to be the evidence from answers to interrogatories and from an expert who had not completed his analysis. Suffice it to say that CR 56(e) plainly requires more than an attorney's speculation about what the evidence *might* be.

The trial court is affirmed.

ANDERSEN, C.J., and UTTER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.

DOLLIVER, J., concurs in the result.