# NOTICE:  SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAY 13, 2021

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 13, 2021

*Susan L. Carlson*

SUSAN L. CARLSON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DARCY L. JOHNSON, a single woman, | ) | |
| | ) | |
| Petitioner, | ) | No. 98726-2 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| STATE OF WASHINGTON LIQUOR | ) | |
| AND CANNABIS BOARD, | ) | Filed |
| | ) | |
| Respondent. | ) | May 13, 2021 |
| | ) | |
| | ) | |

WHITENER, J.—This case concerns the proper notice rule governing premises liability actions brought by business invitees. In 2011, Darcy Johnson, a business invitee at the defendant's state liquor store, slipped and fell in the entryway to that store, just after entering. It was wet and raining outside. The jury returned a verdict for Johnson. The Court of Appeals reversed, reasoning that the trial court should have granted the State's motion for a judgment as a matter of law because Johnson had not satisfied the notice requirement in a premises liability action.

*Johnson (Darcy L.) v. Liquor & Cannabis Bd.* (No. 98726-2)

We granted review to resolve whether the reasonable foreseeability exception to the notice requirement applies. We hold that it does. We therefore reverse and remand to the Court of Appeals.

FACTS AND PROCEDURAL HISTORY

Johnson fell in the entryway to a Washington State Liquor Control Board[1] store in June 2011. At trial, it was undisputed where Johnson fell and that it was wet outside. The entryway to the store had an electronic door with a mat inside, meaning that those entering would walk across about five to six feet of carpet to get in, in addition to the rubber mat on the outside. The floor was made of waxed linoleum. Johnson slipped and fell after stepping off the last mat and onto the floor inside the entryway.

The store clerk, Jay Smiley, testified that he was not aware of the presence of any water or any other hazardous condition on the floor of the entryway before Johnson fell. Nor did he see any water on the floor on the spot where Johnson fell *after* the fall. Johnson testified that she had not noticed any water on the mat or the floor before she fell. Nor did she see any "mud, sand, dirt, or anything like that" on the floor. 4 Verbatim Report of Proceedings (VRP) (Sept. 20, 2017) at 446. (Later, the attorney for the State referenced, in a different context, and in an attempt to

---

[1] In 2015, legislation passed changing all references "from the Washington state liquor control board to the Washington state liquor and cannabis board." LAWS OF 2015, ch. 70, § 47.

*Johnson (Darcy L.) v. Liquor & Cannabis Bd.* (No. 98726-2)

disprove a different assertion, Johnson's falling "onto a wet spot on the floor," but Johnson did not confirm that entirely. *Id.* at 452.) Johnson did testify that "the outside of my pant leg where I was laying . . . was wet" after the fall. *Id.* at 385. Her boyfriend at the time, Steve Pallas, had also slipped (but not fallen) after stepping off the mat in the entryway. He also testified that he did not see water on the floor, and indicated he did not see "other foreign material" on the floor, either. 3 VRP (Sept. 19, 2017) at 174.

Smiley testified about the nature of the entryway. He noted that one of his duties was to put out a "very visible yellow sign that says, 'slippery when wet'" when it rains. 2 VRP (Sept. 18, 2017) at 90. (The day of the incident, Smiley did not put the sign out until after Johnson fell.) He later clarified "that the practice at our store was to put [the sign] out whenever it was wet out, like when it rains," or if the floor had been recently mopped. *Id.* at 109. He also noted that "[r]ainy days always bring muddy footprints" into the entryway. *Id.* at 97. He also mentioned how, when it was wet outside, customers had the tendency to have "their feet get wet and it [the wetness] comes in[to] the store," perhaps due to the lack of an awning over the entryway. *Id.* at 108.

Smiley also indicated that he did not have "any knowledge that there was anything unusual about the floors in this particular store that made them especially

3

*Johnson (Darcy L.) v. Liquor & Cannabis Bd.* (No. 98726-2)

slippery when wet." *Id.* at 98. Indeed, accordingly to Smiley, no one else had ever fallen in the entryway to the store. *Id.* at 106.[2]

After the close of Johnson's case, the State moved for a judgment as a matter of law under CR 50, arguing in part that Johnson had not presented evidence that the State had notice of an unreasonably dangerous condition in the store. The trial court denied this motion.

The jury ultimately returned a verdict for Johnson. The State moved for a judgment notwithstanding the verdict under CR 59, arguing in part that the court had erred in denying its judgment as a matter of law. The trial court denied this motion as well.

The State appealed, raising several assignments of error: that the trial court erred in denying the State's CR 50 motion because of the absence of evidence that the store had notice of water on the floor, that the trial court erred in denying the CR 50 motion because there was no evidence that the floor was dangerously slippery when wet, that the trial court erred in excluding evidence regarding what caused Johnson's damages, that the trial court erred in dismissing the State's comparative fault defense as a matter of law, that the trial court erred by failing to give certain jury instructions regarding apportionment of fault, that the trial court erred in

---

[2] Johnson sought to introduce expert testimony regarding how the floor contributed to the fall. The State's motion to exclude this expert's testimony was granted. The issue of whether the exclusion of this expert was proper is not before the court.

4

denying the State's motion for remittitur, and that the trial court erred in awarding prejudgment interest.

The Court of Appeals decided only the first assignment of error. *Johnson v. Liquor & Cannabis Bd.*, No. 51414-1-II, slip op. at 7 (Wash. Ct. App. Sept. 4, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2051414-1-II%20Unpublished%20opinion.pdf. The Court of Appeals recited the standard thus: "To establish the State's liability for her injury, Johnson was required to show that (1) an unreasonably dangerous condition existed in the liquor store, and (2) the liquor store had actual or constructive notice of the dangerous condition." *Id.* at 5. The Court of Appeals held that "[r]egardless of whether the floor was an unreasonably dangerous condition if it was wet, Johnson did not present any evidence that the store had actual or constructive notice of a dangerous condition." *Id.* at 5-6. The Court of Appeals also disagreed with Johnson's argument that the reasonable foreseeability exception to the notice requirement applied. *Id.* at 7. It reversed and remanded with instructions for the trial court to vacate the verdict and dismiss the case because without evidence of notice, "the State was entitled to judgment as a matter of law." *Id.* at 7-8.

Johnson petitioned this court for review of several issues. We granted review "only on the issue [of] whether the foreseeability exception to the notice requirement applies in the context of premises liability actions." Order, No. 98726-2 (Wash. Dec.

*Johnson (Darcy L.) v. Liquor & Cannabis Bd.* (No. 98726-2)

2, 2020).[3] The parties filed supplemental briefing on this issue. We also received amicus briefs from Washington Defense Trial Lawyers and the Washington State Association for Justice Foundation.

STANDARD OF REVIEW

We review a motion for a judgment as a matter of law in the same manner as the trial court. *Delgado Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 915, 32 P.3d 250 (2001). Granting the State's motion would be "'appropriate [if], viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party.'" *Id.* (quoting *Sing v. John L. Scott, Inc.*, 134 Wn.2d 24, 29, 948 P.2d 816 (1997)). Thus, such a motion can be granted "'only when it can be said, as a matter of law, that there is no competent and substantial evidence upon which the verdict can rest.'" *Id.* (quoting *State v. Hall,* 74 Wn.2d 726, 727, 446 P.2d 323 (1968)). "'Substantial evidence is said to exist if it is sufficient to persuade a fair-minded, rational person of the truth of the declared premise.'" *Id.* (quoting *Brown v. Superior Underwriters*, 30 Wn. App. 303, 306, 632 P.2d 887 (1980)).

---

[3] The State argues that Johnson did not preserve the argument regarding the foreseeability exception to the notice requirement because Johnson did not object to the jury instruction giving the legal standard for negligence. But "[w]e may affirm a trial court's disposition of a motion for summary judgment or judgment as a matter of law on any ground supported by the record." *Washburn v. City of Federal Way*, 178 Wn.2d 732, 753 n.9, 310 P.3d 1275 (2013).

*Johnson (Darcy L.) v. Liquor & Cannabis Bd.* (No. 98726-2)

"We may affirm a trial court's disposition of a motion for summary judgment or judgment as a matter of law on any ground supported by the record." *Washburn v. City of Federal Way*, 178 Wn.2d 732, 753 n.9, 310 P.3d 1275 (2013).

ANALYSIS

"A cause of action for negligence requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994). "The plaintiff in a slip and fall case has traditionally had the burden of establishing that the proprietor's negligence was a cause in fact of his or her injury by showing that the proprietor had constructive notice of the specific dangerous condition." *Wiltse v. Albertson's Inc.*, 116 Wn.2d 452, 458, 805 P.2d 793 (1991). The plaintiff may also show actual notice to meet this burden. *Id.* at 458-59.

In the premises liability context with business invitees, we have often applied the standards above alongside *Restatement (Second) of Torts* § 343 (Am. Law Inst. 1965). *See, e.g., Tincani*, 124 Wn.2d at 138-39; *Wiltse*, 116 Wn.2d at 457. This provision reads:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

7

*Johnson (Darcy L.) v. Liquor & Cannabis Bd.* (No. 98726-2)

> (b) should expect that they will not discover or realize the danger,
> or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the
> danger.

RESTATEMENT § 343.

Subsection (a) provides requirements analogous to our traditional notice requirement. Our traditional standard requires proof of actual or constructive notice. *Wiltse*, 116 Wn.2d at 458-59. Actual notice is the same as "knowing" that the condition exists. "Constructive notice arises where the condition 'has existed for such time as would have afforded [the proprietor] sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger.'" *Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 652, 869 P.2d 1014 (1994) (alteration in original) (quoting *Smith v. Manning's, Inc.*, 13 Wn.2d 573, 580, 126 P.2d 44 (1942)). Thus, constructive notice is the same as "by the exercise of reasonable care would discover the condition." RESTATEMENT § 343(a).[4]

---

[4] Amicus Washington State Association for Justice Foundation argues at length that *Restatement* § 343 has *replaced* our notice requirements with its own. This is incorrect. Decisions from our court make this clear. For instance, in *Wiltse*, we juxtaposed *Restatement* and our traditional notice rule, first quoting *Restatement* in full, then stating the knowledge requirement. 116 Wn.2d at 457-58. Indeed, we cited *Restatement* to support the very proposition that the "plaintiff in a slip and fall case has traditionally had the burden of establishing that the proprietor's negligence was a cause in fact of his or her injury by showing that the proprietor had constructive notice of the specific dangerous condition." *Id.* at 458. We have not *replaced* our requirements with those of the *Restatement*.

*Johnson (Darcy L.) v. Liquor & Cannabis Bd.* (No. 98726-2)

In *Pimentel v. Roundup Co.*, this court crafted an exception to the traditional notice requirement. 100 Wn.2d 39, 49-50, 666 P.2d 888 (1983). Pimentel was shopping at a Fred Meyer store in Yakima when she was injured by a paint can that fell on her foot. *Id.* at 40-41. The paint can had been overhanging on the edge of a shelf before it fell. *Id.* at 41. The trial court instructed the jury that Pimentel was required to show actual or constructive notice of the unreasonably dangerous condition, and the jury returned a verdict in favor of the defendant. *Id.* at 42. We held that when an invitee is injured at a self-service business, the traditional notice requirement is eliminated "when the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable." *Id.* at 49. We limited this exception, noting that "the requirement of showing notice will be eliminated only if the particular self-service operation of the defendant is shown to be such that the existence of unsafe conditions is reasonably foreseeable." *Id.* at 50.

As initially conceived, the exception from *Pimentel* would not apply here because the entryway is *not* a self-service area of a store. "'Self-service departments are areas of a store where customers service themselves. In such areas, where lots of goods are stocked and customers remove and replace items, hazards are apparent.'" *Ingersoll*, 123 Wn.2d at 653 (internal quotation marks omitted) (quoting *Coleman v.*

*Johnson (Darcy L.) v. Liquor & Cannabis Bd.* (No. 98726-2)

*Ernst Home Ctr., Inc.*, 70 Wn. App. 213, 218-19, 853 P.2d 473 (1993)). This would

exclude the entryway to the liquor store from the ambit of self-service exception.

The question is thus whether that foreseeability exception can be expanded to

apply here.[5] Our precedent shows that the exception applies to this case.

    I.    The foreseeability exception to the notice requirement applies beyond the self-service context

For a time, this court applied the *Pimentel* reasonable foreseeability exception

only in contexts essentially identical to the one in which it arose: stores where

someone was injured due to the self-service operations of the store, in the self-

service area of the store.

In *Wiltse*, "[t]he plaintiff . . . slipped and fell in water that came from a hole

in the roof of the defendant['s] . . . self-service grocery store." 116 Wn.2d at 453.

We held that the *Pimentel* exception did not apply to this case, even though this

injury occurred in the self-service area of the store. *Id.* at 461. We reasoned that

> [b]ecause *Pimentel* is a limited rule for self-service operations, not a per
> se rule, the rule should be limited to specific unsafe conditions that are

---

[5] At times, Johnson treats the reasonable foreseeability exception as equivalent to "proving constructive notice with circumstantial evidence." Pet'r's Answer to Amicus Curiae Brs. at 6. But the standards are distinct. "Constructive notice arises where the condition 'has existed for such time as would have afforded [the proprietor] sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger.'" *Ingersoll*, 123 Wn.2d at 652 (alteration in original) (quoting *Smith*, 13 Wn.2d at 580). The reasonable foreseeability standard requires proof that "the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable." *Pimentel*, 100 Wn.2d at 49. Whether constructive notice is proved by circumstantial or direct evidence, it is distinct from reasonable foreseeability.

> continuous or foreseeably inherent in the nature of the business or mode of operation. *Risk of water dripping from a leaky roof is not inherent in a store's mode of operation.*

*Id.* (emphasis added).

We confronted this exception again in *Ingersoll*, 123 Wn.2d 649. Ingersoll "slipped and fell while walking in the common area of The Tacoma Mall." *Id.* at 650. The fall was perhaps due to some substance on the floor. *Id.* at 651-52. We affirmed the summary judgment granted to the defendants. *Id.* at 651. In so doing, we did not take issue with Ingersoll's assertion that the accident happened in the self-service area of the store. *See id.* at 654. We noted that "'self-service' is not the key to the exception. Rather, the question is whether 'the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable.'" *Id.* (quoting *Pimentel*, 100 Wn.2d at 49). Yet we concluded that "[t]he record shows that Plaintiff has failed to produce any evidence from which the trier of fact could reasonably infer that the nature of the business and methods of operation of the Mall are such that unsafe conditions are reasonably foreseeable in the area in which she fell." *Id.*

While these cases did not expand the *Pimentel* reasonable foreseeability exception beyond the self-service area of stores, they did not foreclose such an expansion, either. In fact, they lay the foundation for an expansion of the exception in the case before us now. While *Wiltse*'s holding that "[r]isk of water dripping from

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

a leaky roof is not inherent in a store's mode of operation" may at first seem to foreclose including slip-and-fall cases within the ambit of the exception, this is not the case. 116 Wn.2d at 461. Customers entering a store during business hours while it is raining *is* "inherent in a store's mode of operation." *Id.* Perhaps more to the point, *Ingersoll* emphasized that "self-service is not the key to the exception." 123 Wn.2d at 654 (internal quotation marks omitted). While that did not obviate the self-service requirement entirely, it reveals the real purpose of the exception: to focus on aspects of the proprietor's business that make unsafe conditions reasonably foreseeable. *Id.* Similarly, while *Wiltse* cautioned against "applying the rule in *Pimentel* to slip and fall type cases," 116 Wn.2d at 460 (citing *Kangley v. United States*, 788 F.2d 533, 535 (9th Cir. 1986)), *Ingersoll* was open to the possibility. 123 Wn.2d at 653-55. *Ingersoll* concerned a slip and fall, and we indicated that the exception *could* have applied there, with better evidence. *Id.*

The expansion of the exception began in *Iwai v. State*, 129 Wn.2d 84, 915 P.2d 1089 (1996) (plurality opinion). *Iwai* involved a slip and fall on the State's icy parking lot. *Id.* at 87. The lead opinion reasoned that the *Pimentel* exception applies in essentially *any* premises liability context involving an invitee—including the slip and fall in the parking lot at issue—removing the self-service requirement altogether. *Id.* at 100. The lead opinion retained the requirement that "'the nature of the proprietor's business and his methods of operation are such that the existence of

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

unsafe conditions on the premises is reasonably foreseeable.'" *Id.* (internal quotation marks omitted) (quoting *Ingersoll,* 123 Wn.2d at 654). But there would be no need to connect this to the self-service area of a store. *Id.*

While that opinion commanded only four votes, the one-justice concurrence indirectly supported the expansion of the exception. The concurrence objected to the lead opinion's expansion of the "'self-service' exception to the notice requirement (described in *Pimentel* . . .) *without tying it to the* RESTATEMENT *sections*." *Id.* at 103 (Alexander, J., concurring) (emphasis added). The concurrence went on to note:

> This [expansion of the foreseeability exception from *Pimentel* without tying it to the *Restatement* sections] can do nothing but create confusion for occupiers of land, landlords, insurers, trial judges, and practitioners. Furthermore, the expansion of *Pimentel* achieves nothing, since §§ 343 and 343A [of *Restatement (Second) of Torts*] provide adequate protection to invitees already. In short, *the [lead opinion] has settled on a rule functionally equivalent to the simple standard offered by §§ 343 and 343A from which nothing substantive is gained.*

*Id.* (emphasis added). Thus, the concurrence viewed the invocation of the *Pimentel* reasonable foreseeability exception to the notice requirement as unnecessary. *See id.* The rules as they existed in our state already permitted recovery here. *See id.*

While *Iwai*'s concurrence leaves somewhat ambiguous whether the court *fully* expanded the reasonable foreseeability exception to the notice requirement, that expansion was soon completed by *Mucsi v. Graoch Associates Ltd. Partnership No. 12*, 144 Wn.2d 847, 31 P.3d 684 (2001). There, we considered the case of an invitee who slipped and fell on ice outside an apartment complex. *Id.* at 851-52. Part of the

13

case turned on the sufficiency of the evidence for notice. *Id.* at 862. *Mucsi* referenced the *Iwai* lead opinion's expansion of the *Pimentel* rule twice. First, the *Mucsi* court said, after discussing the requirements of actual and constructive notice:

> Continuing its analysis in *Iwai*, this Court also determined, where the plaintiff is unable to establish actual or constructive notice, the plaintiff may present evidence to establish the unsafe condition was reasonably foreseeable.

*Id*. at 859 (citing *Iwai*, 129 Wn.2d at 100-01). We thus clearly treated the *Iwai* lead opinion's expansion of the foreseeability requirement as part of established law.

Second, *Mucsi* invoked this rule again when issuing instructions as to what the trial court was to consider on remand:

> There must be evidence of actual or constructive notice *or foreseeability*, and a reasonable time to alleviate the situation. [*Iwai*, 129 Wn.2d at 94.] Mucsi has presented sufficient evidence, and when all inferences are viewed most favorably to him, the case must be submitted to the jury. Accordingly, we reverse and remand for trial.

*Id*. at 863 (emphasis added). We thus indicated that upon remand the trial court *must* equally consider foreseeability of the condition as it would actual or constructive notice. *Id. Mucsi* therefore adopted the expansion of the reasonable foreseeability exception.

The State disagrees. It argues that the *Mucsi* court's invocations of the foreseeability requirement are dicta and thus need not be followed. "'Statements in a case that do not relate to an issue before the court and are unnecessary to decide the case constitute obiter dictum, and need not be followed.'" *In re Pers. Restraint*

*of Domingo*, 155 Wn.2d 356, 366, 119 P.3d 816 (2005) (internal quotation marks omitted) (quoting *Malted Mousse, Inc. v. Steinmetz*, 150 Wn.2d 518, 531, 79 P.3d 1154 (2003)). The State argues that *Mucsi*'s references to foreseeability are dicta because "[t]he plaintiff in *Mucsi* presented evidence that the landowner had actual knowledge that snow and ice had accumulated on the walkways from the exits and that the landowner had sufficient time to clear the snow and ice prior to the accident." State Resp't's Suppl. Br. at 11-12 n.6 (citing *Mucsi*, 144 Wn.2d at 862). This does not, however, change the fact that when ordering a remand for trial, we indicated that foreseeability was also to be considered. *Mucsi*, 144 Wn.2d at 863. We cannot call our own disposition of the case, and our own commands of what should be considered at trial, a "'[s]tatement[ ] . . . that [did] not relate to an issue before the court and [was] unnecessary to decide the case.'" *Domingo*, 155 Wn.2d at 366 (internal quotation marks omitted) (quoting *Malted Mousse*, 150 Wn.2d at 518). Rather, it was *part* of our decision.

Our precedent has made the exception from *Pimentel* into a general rule that an invitee may prove notice with evidence that the "nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable." 100 Wn.2d at 49. The self-service requirement of the exception no longer applies.

*Johnson (Darcy L.) v. Liquor & Cannabis Bd.* (No. 98726-2)

The State and amicus Washington Defense Trial Lawyers raise the specter of vastly increased liability if we take this path. This fear is unwarranted. Removing the self-service requirement does not obviate the need to prove the existence of the unreasonably dangerous condition itself. It is therefore not true, as the State argues, that under the reasonable foreseeability exception "a plaintiff who slipped and fell in a store need not demonstrate that any dangerous condition ever existed in the store," or that other elements of a negligence claim disappear. State Resp't's Answer to Amici Brs. at 5. Proof of a dangerous condition remains an element of a premises liability claim. *See Mucsi*, 144 Wn.2d at 859 (showing that a *specific* condition must exist even when "*the unsafe condition* was reasonably foreseeable" (emphasis added)); RESTATEMENT § 343 ("A possessor of land is subject to liability for physical harm caused to his invitees *by a condition on the land . . . .*" (emphasis added)). No case of ours invoking the reasonable foreseeability exception has suggested otherwise, and we do not do so today.

Determining whether an unreasonably dangerous condition existed is not automatic. This is especially true in slip and fall cases. "It is well established in the decisional law of this state that something more than a slip and a fall is required to establish . . . the existence of a dangerous condition." *Brant v. Mkt. Basket Stores, Inc.*, 72 Wn.2d 446, 448, 433 P.2d 863 (1967). "Nor does the presence of water on the floor of a store establish negligence." *Id.* More is needed, especially where

16

wetness "is to be expected." *Id.* at 450. Liability is therefore far from unlimited because one cannot establish the existence of a dangerous condition merely by proving "that [one] slipped and fell on a wet floor." *Id.* at 451. It is thus possible, under the rule adopted today, that it could be *reasonably foreseeable* that the floor *could* become unreasonably dangerous through being wet and slippery, but, at the same time, there might *not* be proof that the floor *was* unreasonably dangerous in *a* particular instance.

II.     Under the reasonable foreseeability exception, the trial court correctly denied the State's motion for a judgment as a matter of law

The reasonable foreseeability standard requires that the plaintiff prove that the "nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable." *Pimentel*, 100 Wn.2d at 49. Assuming that there *was* an unreasonably dangerous condition—an issue untouched by the Court of Appeals and not before this court—when viewing the evidence most favorably to Johnson (the nonmoving party), we hold that the trial court correctly denied the State's motion for a judgment as a matter of law under the reasonable foreseeability standard. *See Guijosa*, 144 Wn.2d at 915 (providing the standard).

Assuming that there *was* an unreasonably dangerous condition, the record contains substantial evidence of the potentially dangerous slippery nature of the entryway. The store policy "was to put [a 'slippery when wet' sign] out whenever it

was wet out, like when it rains," or if the floor had been recently mopped. 2 VRP (Sept. 18, 2017) at 109. The store clerk's testimony that "[r]ainy days always bring muddy footprints" into the entryway of the store went uncontroverted. *Id.* at 97. So, too, did his testimony that customers' "feet get wet and it [the wetness] comes in[to] the store" with them when it rains, perhaps due to the lack of an awning over the entryway. *Id.* at 108. Further, people entering a store on a rainy day is an inherent mode of operation of a business in Lewis County, as it is in various parts of our state where it rains. Such evidence here was certainly "'sufficient to persuade a fair-minded, rational person of the truth of the declared premise.'" *Guijosa*, 144 Wn.2d at 915 (quoting *Brown*, 30 Wn. App. at 306).

Not all the evidence in the record supports this conclusion. In fact, the clerk also noted that he did not have "any knowledge that there was anything unusual about the floors in this particular store that made them especially slippery when wet." 2 VRP (Sept. 18, 2017) at 98. And according to Smiley, no one else had ever fallen in the entrance to the store. *Id.* at 106. But given the requirement that we view the evidence in the light most favorable to Johnson, it cannot "'be said, as a matter of law, that there is *no* competent and substantial evidence upon which the verdict can rest.'" *Guijosa*, 144 Wn.2d at 915 (emphasis added) (quoting *Hall*, 74 Wn.2d at 727). The trial court thus correctly denied the State's motion for judgment as a matter of law. *See Washburn*, 178 Wn.2d at 753 n.9 ("We may affirm a trial court's

*Johnson (Darcy L.) v. Liquor & Cannabis Bd.* (No. 98726-2)

disposition of a motion for summary judgment or judgment as a matter of law on any ground supported by the record.").

This conclusion does not run afoul of *Wiltse*. There, we held that "[r]isk of water dripping from a leaky roof is not inherent in a store's mode of operation." *Wiltse*, 116 Wn.2d at 461. This, however, is distinct from the situation before us here. While water dripping from a leaky roof is entirely incidental to a business's operations, customers tracking water in through the entryway of a business where they are meant to enter the store is *not*: that *is* inherent in a store's mode of operation.

This conclusion does not end the case. As noted above, the Court of Appeals did not resolve all the State's assignments of error. Indeed, the Court of Appeals did not reach the issue of whether the judgment as a matter of law should have been granted on the ground that Johnson failed to provide evidence of an unreasonably dangerous condition. *Johnson*, No. 51414-1-II, slip op. at 5-6.[6] These issues may be taken up again at the Court of Appeals upon remand.

---

[6] Johnson argues that, at trial, the State conceded that the floor was unreasonably dangerous when the State argued for exclusion of Johnson's expert. This is not the case. Among other arguments—such as the allegedly conclusory and nonscientific nature of the expert's proposed testimony—the State argued that it was "common knowledge" that a damp or wet floor would be more slippery than a dry floor. Clerk's Papers at 295. This is not a concession that the floor was unreasonably dangerous when wet. We have long indicated that a floor must have more than an ordinary amount of water on the floor to constitute an unreasonably dangerous condition. *Brant*, 72 Wn.2d at 448-49. Indeed, we have called the presence of water on a floor "'a most common condition.'" *Id.* at 450 (quoting *Shumaker v. Charada Inv. Co.*, 183 Wash. 521, 530-31, 49 P.2d 44 (1935)).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Johnson (Darcy L.) v. Liquor & Cannabis Bd.* (No. 98726-2)

CONCLUSION

We hold that the reasonable foreseeability exception applies outside the context of a self-service area of a business where the "nature of the proprietor's business and his methods of operation are such that the existence of [the] unsafe condition[ ] on the premises is reasonably foreseeable." *Pimentel*, 100 Wn.2d at 49. We also hold that under this standard, the trial court properly denied the State's motion for a judgment as a matter of law because Johnson presented evidence of the reasonable foreseeability of an unreasonably dangerous condition. We therefore reverse and remand to the Court of Appeals for further proceedings in line with our decision.

20

_____
Whitener, J.

WE CONCUR.

_____
González, C.J.

_____
Stephens, J.

_____
Johnson, J.

_____
Gordon McCloud, J.

_____
Madsen, J.

_____
Yu, J.

_____
Owens, J.

_____
Montoya-Lewis, J.